that the conveyance to Goodenough was against his will and in fraud of his rights and seeks to gain the title for himself, while defendant insists that complainant assented to the conveyance, and that under our statute there is no resulting trust in his favor.

*Held,* That the statute applies only to those cases in which the deed is taken to a party other than the one furnishing the consideration, *with the consent of the latter.* From the facts which appear in this case it appears that Goodenough was acting in the interest of complainant and as his agent. He should therefore have had the deed made out to him or a trust clearly declared., so that it could be legally enforced.

The decree was correct and was affirmed with costs.

————————— ►◄●►◄ —————————

## O'CONNOR *vs.* PARKER *et. al.*

Error to Wayne Circuit.

Section 25, of the Bankruptcy Act, makes certain payments void, when made to prefer a creditors, &c. A being insolvent, gave his note endorsed by B to a creditor. In a suit against the endorser, *Held,* that the note was valid, and was not to be treated as a *payment* within the meaning of the act.

*Opinion by* COOLEY, J.—This was a writ of error brought on a judgment rendered against O'Connor in the Court below as endorser of a note made by McKinney & Co. The sole defense was that the note was made by McKinney & Co., and accepted by the Parkers in payment of a precedent debt, with the knowledge on the part of all the parties that McKinney & Co. were insolvent; that the giving of the note was with a view to prefer the Parkers as creditors; that McKinney & Co. were soon after proceeded against and declared bankrupts, and that by reason of these facts the note and endorsement were altogether void. The Circuit Court held these facts to constitute no defense, and the Supreme Court affirm that decision.

The argument of plaintiff in error was that section 25 of the Bankrupt act makes certain payments void when made to prefer a creditor or to defeat the policy of the act, and the giving of this note it was said was such a payment. The Court, however, held other-

3

wise, considering that the payments mentioned in the act were those which reduced the means of the debtor and diminished his capability of paying his creditors ratably ; not the mere changing the form of an obligation from an account to a note.

Judgment affirmed.

— ━━┥ ━ ┝━ ·  ·· ━━

## DRUSE vs. WHEELER et. al.

### Error to Washtenaw Circuit.

A entered into a written agreement to exchange lands with the trustees of a Church, the proper conveyances to be made as soon as the trustees could get legal authority to act. On the same day he gave verbal permission to the trustees to enter upon the land he was to convey, and to build sheds. The fence was set back and sheds built. Some fifteen months afterwards, A moved back his fence so as to include the sheds, and the trustees, a few days later removed the fence and took off the sheds, &c. *Held*, That there was no right of possession secured under this contract for the exchange of lands. The whole matter was contingent upon the society having the right to act. There was no connection between the formal license and the written contract. The rights of the trustees must have rested on the parol license, whatever they may have been, and a parol license is revocable at any time.

In actions of trespass to lands it is proper to give in evidence acts showing the disposition with which the trespass is committed.

*Opinion by* CAMPBELL, C. J.—Plaintiff brought trespass against defendants for breaking his close and committing various grievances, including the removal of certain fences and sheds, and an imprisonment of his person. Defendants under the general issue gave notice of defense, and also of title in a Baptist Church of which they were trustees, and as such did the acts in question. It appeared that the plaintiff owned a farm adjoining the church lot, and November 29, 1867, entered into a contract purporting to be with the trustees, whereby, as soon as the latter could get legal authority to act, plaintiff was to deed, by warranty deed, to the church the lot they occupied, and a part of his adjacent premises, and the church was to quit-claim to him the half quarter section, including the farm and church premises, and agreed to occupy the land deeded by him for church purposes, parsonages, sheds, &c., to build their erections at certain places, and not to sell the premises for any other purposes except for farming.