MERICA E. HEATH, ADM'X OF ELIJAH W. WATERS V. DAN-
IEL H. WATERS AND WILLIAM B. REMINGTON.

*Surviving partner's responsibility as trustee—Partners not entitled
to compensation for services necessary to the business—Part-
nership accounting—Presumptions against a witness who refuses
to answer on cross-examination—Damages for vexatious appeals.*

A tenant of firm property may become equitably responsible to the
representative of a deceased partner, and an agreement to sub-
stitute payment of reasonable rent would not render the case
against him so defective as to preclude fixing the amount in a
suit in equity, especially when testimony has been introduced
at great expense without any reasonable attempt to oppose the
jurisdiction.

A surviving partner, though legally vested with title to all firm
assets, is also trustee to dispose of them for the best interests
of *decedent's estate*; and is bound to keep its representative
fully informed of their condition.

A partner must use his best efforts and judgment in promoting the
firm business without further compensation than his share in
the profits.

The sickness of a partner is one of the risks incidental to partner-
ship business, and does not give another partner any claim for
personal services in conducting the entire business if the part-
nership articles do not provide for any.

A surviving partner procured from the executrix of the deceased,
the transference to him of a certain partnership claim, in com-
pensation for his services in conducting the entire business during
decedent's illness, and suppressed this claim from the inventory
of the partnership estate. *Held* that this transaction operated
as a fraud in law.

A double responsibility rests upon a trustee in dealing with one
whom he knows to be also a trustee, as any dealings between
them in wrong of the latter's trust affects both with an equita-
ble responsibility.

A surviving partner who is closing up the firm business is bound to
pay over to the decedent's estate, as fast as realized, its share
of all money not needed to pay debts.

A surviving partner, by misrepresentations and fraudulent dealing,
procured from the decedent's administratrix, who was also, as he
knew, trustee for decedent's children, a conveyance of partner-
ship interests belonging to decedent's estate, for much less than
their actual value. *Held* that the use of the property thus
wrongfully appropriated must be regarded as a continued use

40 MICH.—58.

of the partnership assets never accounted for, which the survivor might properly be decreed to make good to the administratrix on a bill brought by her for an accounting.

Under Act 96 of 1877, authorizing a cause to be referred to any suitable person when the circuit court commissioner cannot act, it is for the court referring it to decide who is suitable.

After a referee had closed the proofs, made his accounting and drafted his report, he was held not disqualified from completing it by stating what he thought the result would be in the circuit court.

The decree of a court in a matter of reference is based on the testimony taken before the referee and not on the referee's conclusions, when they are excepted to.

Obstinate resistance to judicial inquiry is strong evidence of probable fraud.

Banking business is not privileged from judicial scrutiny.

The benefit of cross-examination is an essential condition to the reception of direct testimony.

Refusal to respond on cross-examination will always damage the credit of so much of the direct testimony as it might have qualified.

When a witness who evades cross-examination is the chief party in interest, or one who is plainly seeking to screen him, his testimony in his own favor ought to be disregarded when it needs explanation.

It is to be presumed that when a witness refuses to explain what he can explain, the explanation would be to his prejudice.

The sum decreed on a bill for an accounting cannot be increased on affirmance if complainant did not appeal, even by way of an allowance for a vexatious appeal.

Compound interest was properly allowed in a decree for an accounting by way of damages for persistently and wrongfully refusing to account.

Damages are allowed by Comp. L., § 7402, for vexatious appeals, if oppressive, and are properly imposed where all the trouble is caused by willful and persistent violation of ordinary fiduciary duty, and by obstinate concealment of the facts from judicial inquiry.

Appeal from Kent. Submitted January 22 and 23. Decided April 9.

BILL for a partnership accounting. Defendants appeal.

*James A. Rogers* and *Stephen H. Ballard* for complain-

ant. It is illegal for a surviving partner to procure compensation from decedent's estate for carrying on the business during decedent's sickness, *Beatty v. Wray*, 19 Penn. St., 516; *Franklin v. Robinson*, 1 Johns. Ch., 165; *Bradford v. Kemberly*, 3 Johns. Ch., 434; a surviving partner is a trustee who must wind up the business and account to decedent's estate (*Ramsdell v. Millerd*, Har. Ch., 373; *Stoughton v. Lynch*, 2 Johns. Ch., 210; *Beacon v. Rickets*, 4 Johns. Ch., 304; Story's Eq. Jur., §§ 1207, 1211; Story on Partnership, § 343), and cannot buy from its representative at private sale, its share of firm assets, *Huguenin v. Baseley*, 14 Ves., 273; *Farnam v. Brooks*, 9 Pick., 212; *Butler v. Haskell*, 4 Dessau., 680; *Wormley v. Wormley*, 8 Wheat., 421; *Dunscomb v. Dunscomb*, 1 Johns. Ch., 510; Story's Eq. Jur., §§ 190, 196, 287.

*Eben Smith* and *J. C. Fitz Gerald* for defendants. The representative of a deceased partner may sell the latter's interest to the survivor and settle with him, and in the absence of fraud or mistake, the settlement would be conclusive on the parties and all claiming under them, *Sage v. Woodin*, 66 N. Y., 578; *Chambers v. Howell*, 11 Beav., 6; Parsons on Partnership, 443, n. *s*: 511; and the burden of proof is on the representative to show fraud if it is sought to set it aside on that ground, *Perrett v. Yarsdorfer*, 37 Mich., 597; *Robert v. Morrin*, 27 Mich., 306; fraud is not to be inferred from the mere relations of the parties, *Chambers v. Howell*, 11 Beav., 14; one who seeks to set aside an agreement for fraud must prove the fraud as alleged, *Creasey v. St. George etc.*, 34 Mich., 51; *Ford v. Loomis*, 33 Mich., 121; *Rudd v. Rudd*, id., 101; *Harwood v. Underwood*, 28 Mich., 427; *Buck v. McCaughtry*, 5 T. B. Monr., 216; *Carneal v. Banks*, 10 Wheat., 181; Kerr on Fraud, 365, 382; one cannot retain what he has received and yet treat his agreement as void, *Dunks v. Fuller*, 32 Mich., 242, and if he seeks to rescind for fraud, he must not delay, *Wright v. Peet*, 36 Mich., 213; *Whiting v. Hill*, 23 Mich., 399; *De*

*Armand v. Phillips*, Walk. Ch., 186; *Grymes v. Sanders*, 93 U. S., 62; mere inadequacy of consideration does not show fraud unless extremely gross, and relief cannot be obtained on that ground if the bill does not charge fraud in this particular, *Eyre v. Potter*, 15 How., 42; a surviving partner must account to the decedent's representative only when he continues business with capital belonging to the decedent's estate, Story's Eq. Jur., § 676 *b;* Parsons on Partnership (3d ed.), 481; *Wedderburn v. Wedderburn*, 22 Beav., 99; *Taylor v. Hutchison*, 25 Gratt., 536; *Crawshay v. Collins*, 15 Ves., 218: 2 Russ., 325; *Brown v. De Tastet*, 1 Jacob., 284; Collyer on Partnership, 534; *Waring v. Crane*, 1 Parsons Selected Eq. Cases, 522. One should not be compelled to go to trial before one who has prejudged the case, *Schermerhorn v. Van Alen*, 13 How. Pr., 82; *Moses v. Julian*, 45 N. H., 52; *Yale v. Gwinits*, 4 How. Pr., 253. A surviving partner who carries on the business and has to account for profits to the decedent's estate is entitled to compensation for his services, *Schenkl v. Dana*, 118 Mass., 236; *Griggs v. Clark*, 23 Cal., 430; *Newell v. Humphrey*, 37 Vt., 270.

CAMPBELL, C. J. This controversy, which is chiefly to obtain a settlement of partnership affairs, contains two main branches: *First*, a cause of action against Daniel H. Waters for such accounting; and *second*, a claim against Remington for the use of certain property which had been previously used by the same partnership. These for the purposes of the decision will be kept separate as far as may be.

The complainant's case is in brief this: Her former husband, Elijah W. Waters, was for some time before his death in partnership with his brother, Daniel H. Waters, and the business involved in this cause was chiefly the manufacture and sale of wooden ware of various kinds. Most of this was made on premises used with water-power derived from a canal in Grand Rap-

ids, and there was a saw-mill auxiliary to the other machinery. A majority of the work was called box and rim work, made of thin wood bent into circular forms, for boxes, measures and similar ware. The land and buildings belonged to the several partners in common, but the power was rented of a company owning and managing the canal. The record contains a history of earlier dealings which are not important, except perhaps to throw light on some collateral inquiries not directly involved in the merits.

The partnership in question was controlled by written articles not executed until April 19, 1866, which gave each partner an equal right and interest with his co-partner, and which showed each to have then contributed $10,901.33. By these articles it was covenanted that the surviving partner, upon the death of either, should upon payment as therein provided, become sole owner of all the joint property, real, personal and in action.

On June 7, 1867, a full settlement was made to that date. No further settlement was made during the life of Elijah. After his death certain dealings were had which will be referred to in their place.

During the latter part of 1867, Elijah was confined to his house and unable to take any active part in the business. He died January 11, 1868, leaving a will made November 4th, 1867, whereby he bequeathed and devised to complainant, his wife, all his property, whether partnership or not, that was held jointly with Daniel, to hold for life in trust to the amount of ten thousand dollars, so as to provide $5,000 to be invested for each of her two children, and the remainder for her own benefit. But she was not to break in on the capital beyond the $10,000. The personal assets not held jointly with his brother were to go absolutely to the wife.

On the 16th of March, 1868, complainant was made executrix. About that time and shortly after an inventory was made of the estate in the probate court in which the interest in the partnership effects was set

down at $10,940.31. This is but a few dollars more than was originally put in. This inventory was made at what the appraisers called the actual cash value. Upon some items they discounted paper down so as to make it equivalent to a ten per cent. investment to its maturity in the future. An important controversy arises as to the correctness of the property valuations, as will appear hereafter. A partnership inventory made up $28,980.62, less $5,100 debts.

At about the same time Daniel Waters represented to complainant that he was justly entitled to payment for his services in managing the business during his brother's illness, and she turned over to him a partnership claim against one T. T. Davis, the precise value of which is a little uncertain, being spoken of as $3,500 and as $3,100. It was reckoned below at $3,100. It is claimed that this was a doubtful demand. It seems, however, to have been made available. It was not included in the inventory.

Daniel Waters did not exercise his right of taking the property under the partnership articles, but continued doing business apparently in the usual way until September, 1868, when he procured a transfer from complainant of all the partnership interests in personal assets on the assumed basis of the March inventory for $2,790.31, a majority of which he paid by time notes drawn without interest, which, however, he took up in the ensuing December. At the time of purchasing out the personalty he took a lease of the building and machinery for $600 a year. Two quarters' rent was paid.

In December, 1868, complainant married one Frederick G. Heath, and was soon thereafter appointed administratrix, with the will annexed, of the estate of Elijah W. Waters.

Immediately after purchasing from the administratrix Daniel Waters joined with him in business, Alonzo Clements, his foreman, and Oliver S. Waters, his brother, and they continued to carry on the same business until

December, 1869, when a change was made. Daniel Waters then sold out his interest in the building and fixtures that had been used to defendant Remington, who went into possession of the whole for similar purposes. Daniel Waters and his partners organized a corporation known as the Michigan Barrel Works, where work of the same general character has been carried on ever since.

Remington subsequently, and while this suit was pending, made an arrangement whereby he was allowed to keep possession in consideration of paying complainant what the premises were worth.

As the final decree held him responsible for nothing more than this rent, the only question, so far as he is concerned, is whether he has been overcharged. The objection that he should not have been charged at all in equity is not, we think, well taken. He was alleged by the bill and shown by the proofs to have had the use of property belonging to the firm of E. and D. Waters, and in the view we have taken of the other branch of the case might have been liable to some sort of responsibility enforceable in equity. The agreement to substitute payment of reasonable rent did not render the case defective, and we see no very good ground for declining to allow the amount to be fixed in this case, especially as the testimony was introduced at much length on both sides at great expense and entirely without any reasonable attempt to oppose the jurisdiction.

We think the amount not excessive. While the accounting charges the gross rent at $1,200 a year, it allowed Remington for repairs and other outlays which reduced the rent to an entire sum of not much over $1,000 for two years and a quarter. This is very much less in our opinion than the net rent ought to have been on the proofs, and we think he has no ground of complaint.

So far as Daniel Waters is concerned, the facts are conceded that complainant relinquished to him the Davis

claim, released the personal assets, and leased him the half of the building and machinery. If those transactions were valid, there is no basis for this action. If, on the other hand, the relations of the parties were such that any one of these transactions was invalid, it would be difficult to sustain the rest.

By the death of his brother, Daniel Waters while he became legally vested with the title to all partnership assets, became also a trustee to manage and dispose of them for the best interests of his deceased partner's estate, and the estate was entitled to half of the resulting proceeds. He was bound to keep accurate accounts and to keep the executrix informed correctly of all that concerned her.

The agreement with complainant to allow him to retain the Davis claim cannot be sustained. It was not only illegal, but we think also the testimony indicates unfairness and a fraudulent advantage taken.

According to defendant's own statement his services for which this claim was transferred to him ran back some two years, and would thus cover all the time included within the written articles. He represented and alleges that complainant admitted an understanding on the part of Elijah Waters to compensate him for his charge of the business during the latter's sickness. The articles of partnership contain no such provision, and the settlement of June, 1867, which was within about six months before Elijah's death, would at any rate have disposed of any such claim up to its date. Complainant evidently depended on what he said on business subjects, and showed a readiness to conform to his wishes that can only be explained by that confidence. She was not yet qualified as executrix and had no power to deal with the assets, so far as we can reach the dates from the record. The transaction was certainly had before any inventory was taken, because the Davis claim was not taken into the account in estimating the assets of the estate.

It is certain that at this time Daniel Waters had no legal claim against his brother's estate for personal services. So long as a partnership continues, the sickness or inability of a partner is one of the risks incidental to the business, and works no forfeiture or deduction. If Elijah Waters himself had seen fit to pay Daniel for his services, it was outside of the articles and would have been a mere gratuity. Daniel was bound at all events to use his best efforts and judgment in promoting the common enterprise, without further compensation than his share in its profits. The executrix had no right to give away the property of the estate, even if there had been reasons which would have operated on the generosity of the deceased. The procurement of this transfer and its suppression from the inventory operated as a fraud in law, whether fraudulent in fact or not. It is not necessary, therefore, to dwell upon the facts, which were not such as to commend themselves.

We think, therefore, that defendant Waters was bound to account for the Davis claim.

The lease and the transfer of the firm assets were in effect one transaction, and brought about in substantially the same way, and must stand or fall together.

It has already been stated that under the articles of co-partnership Daniel Waters might have taken the property of the concern, on the terms mentioned in the agreement. No method was there pointed out for determining their value. As surviving partner he possessed exclusively the means of determining just what the assets consisted of. It was his duty, before making any bargain or other dealing with the representative of Elijah's estate, to put her in as complete a condition of knowledge as himself. This would necessarily include not only a statement of assets and liabilities, but such information concerning the business as would indicate the value and advantages of the concern. This duty would require him in dealing with a woman not thor-

oughly familiar with such matters to use additional care to prevent her from being deceived or imposed upon. A trustee cannot put himself at arm's length, and compel the beneficiary to protect herself. He is bound to protect her against his own imposition as well as against wrong from any other quarter. And the slightest pressure or unfairness would authorize her to complain. In the present case the fiduciary obligations were more extensive than usual. Complainant herself was acting in a fiduciary capacity, of which he was fully aware; and any dealing with her in the wrong of the estate would affect both parties with an equitable responsibility.

The facts in this record make out a strong case of wrong-dealing. The evidence indicates that during his lifetime Elijah Waters derived a liberal living out of the business, and there is no reason to believe he was not justified in so living. He made his will about four months after a full settlement, and could not have been ignorant how matters stood. This will remained unchanged at his death, and he had not become incompetent to change it. He understood when he drew this will that the business was prosperous enough to allow ten thousand dollars to be taken from it and invested, without impairing the comfortable maintenance of his wife and children. It is incredible that such a business could be not only seriously impaired, but almost destroyed, without change of circumstances or management, in the course of the few weeks which intervened before the transactions complained of began.

After Elijah's death the defendant Daniel furnished means very sparingly to complainant, and she was given to understand the business was not flourishing or profitable. Defendant represented that the concern had no money in bank, when in fact there was a considerable deposit. The money on deposit from month to month cannot be accounted for unless the business was active. And if defendant was at that time merely closing it up he was clearly bound to pay over to complainant, as fast

as realized, her share of all money not needed to pay debts. But the pretext that he was merely endeavoring to close it, has no foundation in the proofs.

Reference has been made to the partnership inventory of March, as well as to the probate inventory. The latter was more general than the former, but was made under the same management and shows to some extent how the appraisers acted. In the probate inventory a mortgage running for several years, and drawing ordinary interest, and which was entirely secure, was by some peculiar freak of the appraisers, instead of being set down according to the facts, and without any mention of its amount, put down at not much over half its face. The same course was evidently pursued concerning the partnership inventory. The accounts belonging to the firm are not put down at their face, either with or without deduction, but are set down at such arbitrary sums as the appraisers saw fit to assume as their cash value. In the subsequent dealings with complainant, defendant was particular in obtaining a statement that while he took these accounts at less than their face, they were taken at his risk and on terms satisfactory to complainant. Such an explanation is itself very suspicious. We have no means afforded us of knowing how much was due on these accounts, nor at what rate of discount the appraisers cut them down, nor what allowance, if any, they may have made beyond this for their doubtfulness. The inventory is therefore untrue, and the extent of its misrepresentation is unknown. Nor can we have any assurance that there may not have been accounts ignored altogether, as not of any value. The omission of the Davis claim, which turned out to be available, suggests such possibilities.

The remaining assets, instead of being set down at their merchantable value, were, according to what we deem the most reliable testimony, put down in some, if not in all cases, at their actual cost. If properly set

down, the amount of the assets would have been much increased.

In September, when the business had been carried on all the season, and when a large amount of wares had been made and either disposed of or on hand, defendant procured from complainant a transfer of all the personal assets of the concern for $2,790.31. This amount was reached by taking the March inventory as a basis and deducting from its face a sum of $5,100, which defendant represented he had paid upon debts. No showing was made of what had taken place in the mean time, either in the way of collections, manufactures or sales, and it seems pretty evident that defendant made complainant believe there had been nothing done worth mentioning. She was not even allowed the six months' interest which accrued on the money items from March to September, and was led to the conclusion that Waters and his future associates were going on without any idea of profit, but merely to hold their ground until their rivals were crowded out. The pinching process to which complainant had been exposed during the year had prepared her to give up her interest on such terms as should be offered. The larger part of the purchase money was put into time notes drawing no interest, the cash value of which, if reckoned by the previous standard of the inventory, might have been very much reduced.

We can draw no conclusion from the testimony in the case concerning this transaction except that it was fraudulent and unconscionable. Laying aside all the proof hereafter referred to concerning sales and profits, the defendant, instead of acting as an honest trustee, concealed the whole details of the business from complainant and induced her to act not only on a practically fictitious inventory, but upon positive misrepresentations concerning the financial condition of the business. He obtained also a lease on terms which were, to say the least, sufficiently favorable, had he complied with them.

Having thus secured control of the entire business and assets, at a gross undervaluation, he went on until December, 1869, in company with Clements and Oliver Waters, both of whom must have known substantially what was the condition of affairs, and while they all profess that the venture was a failure, they went out of it into a new and large similar enterprise under circumstances showing these pretenses to be unfounded. At the same time Daniel Waters found in defendant Remington a purchaser of the apparatus of the business from which he was changing, ready to incur the same risks of ruin, and to invest considerable further money in the venture.

We are satisfied that the dealings of Daniel with defendant were both constructively and actively fraudulent, and that they must be avoided. The use of the property thus wrongfully appropriated must be regarded as a continued use of the partnership assets never accounted for, which he may properly be decreed in this suit to make good to complainant.

Such was the view of the circuit court, which ordered an accounting. Before considering the result there arrived at, some questions of practice require notice.

The long delay of these proceedings led to some official changes in the office of commissioner. After the accounting was substantially finished, an appeal was taken to the circuit court from the decision of the commissioner refusing to open the proofs to such an extent as defendant desired. From the decision of the circuit court approving the commissioner's action an appeal was brought into this court and dismissed for want of jurisdiction, because the proceeding was interlocutory. Before the proceedings could be carried very far after their renewal below they were arrested by a removal under an illegal statute into the Superior Court of Grand Rapids, and suspended until set in motion again by the mandate of this court. The circuit court commissioner who had general authority to act in the premises was disqualified;

and the court thereupon referred the matter to Mr. Wolcott, who had conducted the accounting to its close before, and whose report only lacked a formal completion when the proceedings were stayed by the unauthorized action before mentioned.

It is now urged, as it was urged in the circuit court, that Mr. Wolcott was disqualified,—*first*, as not being a commissioner, and *second*, as prejudiced.

There is no ground for the first objection. The statute is too plain to be open to doubt. The circuit court, when a commissioner cannot act, may refer the cause to any "suitable" person. It is for the court to decide who is suitable.

Neither is there any weight in the second objection. It rests on the claim that Mr. Wolcott, after he had gone out of office, and when he had at the time nothing more to do with the case, in which the testimony and accounting were substantially complete and the report drafted, informed a client what in his opinion would be the proximate result in the circuit court.

If any further action of Mr. Wolcott could have imperilled any one's rights, there might have been an impropriety in subjecting them to his action. But in this case the testimony had already been taken, and the decree of the court must be based upon that, and not upon the commissioner's views, unless acquiesced in or found correct. The action of the commissioner is merely auxiliary to the conscience of the court. The exceptions to his conclusions made it necessary for the court to decide on its own view of the merits, and the commissioner's decision ceases to have any importance of its own. The materials for the judgment of the court are all we need consider.

We shall not be required to devote much attention to sifting the mass of prolix testimony which the misconduct of defendants has introduced into this case. If defendant Waters had performed the duty which common honesty required of him, the production of his books

would probably have made the accounting brief and simple. It would also have put an end to any question of fraud, if his conduct had been, as he claims, what it should be. No stronger evidence of probable fraud could exist than the obstinate and offensive manner in which every attempt to get at the real state of the partnership business was resisted, not only by Daniel Waters, but by his associates and his banker. The latter, who seems to have been honest in his remarkable notion that banking business is privileged from scrutiny, was probably free from any wrong design. The spirit of the others is manifest. The effect of this scandalous conduct was to protract the inquiry for several years, until, as is now claimed, the books have been destroyed. And in this condition of affairs defendant contends that his general denials in regard to profits should exempt him from any decree. And it is urged that by failing to have him punished for contempt or compelled to answer, complainant lost the means of proof.

We are certainly convinced that it is to be regretted the conduct of defendant was not punished severely. But it is not very plain to us how far such punishment would have advanced the accounting. Complainant had the right to introduce the best evidence at her command and make out as good a case as she could. Nor do we think much attention should be paid to defendant's testimony. The benefit of cross-examination is an essential condition to the reception of direct testimony. There are cases in which a failure to respond on cross-examination will justify the exclusion of at least so much of the direct testimony as it might have qualified. It must always damage its credit. When the witness who evades or refuses cross-examination as the chief party in interest, or one who is plainly seeking to screen him, it is no more than common justice to disregard his testimony in his own favor where it needs explanation. We may and should assume that when he refuses to explain what he can explain, the explanation would be to his prejudice.

And when, as in this case, his testimony is directly falsified by facts well proved, the reasons for rejecting it are very strong.

The referee made up his estimates from bank balances, income returns, and reports under the internal revenue laws showing the amounts of goods manufactured in various periods. These reports of manufactures cannot be supposed to have been overstated. It was to the interest of all parties to place them as low as possible. On these estimates of goods made up he reckoned a percentage of profits which was based on the testimony of disinterested witnesses. This assumed an average profit of twenty-five per cent. The bank and income statements were relied on as corroborating closely the correctness of this result.

It was in defendant's power for several years after suit was commenced, if not always, to show the exact profits of his business. His refusal to do so authorizes us to believe that he thought they would exceed anything that complainant could show. In our opinion the commissioner placed the profits quite as low as the proofs would have warranted. We are strongly impressed with the belief that the defendant has profited by his contumacious silence. But as complainant has not appealed we cannot enlarge the sum decreed. Compound interest was proper under the circumstances.

Upon the argument it was suggested that an allowance ought to be made to complainant for the great expense and vexation of these proceedings, which we think counsel were justified in censuring in strong language. We did not then and do not now see how this can be done as the case stands before us. Without deciding whether it could be done in such a case, we do not see how we could allow it where no appeal has been taken by complainant, who must be regarded as satisfied with the decree below.

The statute, however, provides expressly for damages on vexatious appeals, and we have on several occasions

granted them where we regarded the appeal as oppress-
ive.  *Waterman v. Toms*, 7 Mich., 78; *Meyerfield v. Stett-
heimer*, 20 Mich., 418;  *Campau v. Campau*, 25 Mich., 127;
*O'Connor v. Parker*, 23 Mich., 22.    We have always been
reluctant to visit appellants with damages unless in plain
cases of wrong.    We think the present case comes within
the purposes of the statute.    All the trouble and expense
have come from a willful violation of ordinary fiduciary
duty in the first instance, and a persistent violation of
the same duty in refusing to give the court means of
arriving at the truth.

We therefore affirm the decree with interest from the
date of the balance ascertained, and with costs of this
court against both defendants, and with five hundred
dollars damages against Daniel H. Waters for his vexa-
tious appeal.

The other Justices concurred.