Hillsborough, }
May 6, 1919. }

## MARY L. COTTON & a. v. I. FRANK STEVENS.

A surviving partner is a trustee, and the personal representative of the deceased partner is a *cestui que trust*, with reference to the partnership property.

In a bargain with the owner relating to trust property the trustee is obliged not only not to misrepresent and not to conceal, but also to disclose everything known to him which in the mind of a prudent person would be likely to affect the bargain; otherwise, though there be no design to cheat, there is a constructive fraud.

BILL IN EQUITY, to rescind a contract of sale and for an accounting. Mary L. Cotton is the sister of the defendant and the widow of John E. Cotton, who died June 18, 1912, and who had been

a partner of the defendant in the manufacture and sale of refrigerators in Nashua. The other plaintiff, Lillian R. Fletcher, is the adopted daughter of Mary and the residuary legatee under Mr. Cotton's will. After Mr. Cotton's death the business was conducted by the defendant as surviving partner until March, 1913, when he purchased the interest of his late partner from Mrs. Cotton, who was the executrix of her husband's will. Mr. Cotton left a letter of instructions to his widow advising her to employ George B. French as counsel to assist her in settling his estate, warning her against the interference of the defendant, whose loyalty he appeared to doubt. Immediately after Mr. Cotton's death the defendant as surviving partner had an inventory taken of the partnership property and filed the same in the probate court July 29, 1912. On June 21 Mrs. Cotton employed Mr. French as counsel for the estate. She testified that she wished to draw from the firm assets $20,000, but that the defendant declined to comply with her request because, as he said, the business was running down and there were no profits. In a letter to her he said the business would be embarrassed by a withdrawal of funds, but it is found he did not believe this to be true.

On December 2, the defendant made an offer of $135,897.53 for the Cotton interest, which was declined by the plaintiffs, who made a counter-offer of $233,781.73 by letter of December 18, to which the defendant made no reply. February 7, the plaintiffs submitted a final offer to sell the interest of the estate to the defendant for $185,000 with interest from January 1. This offer was accepted, a contract executed by the parties, a decree authorizing the sale issued by the probate court, and a conveyance ultimately made. This sale the plaintiffs seek to have set aside. The offer, counter-offer and final offer purported to be based on the appraisal.

The plaintiffs claimed they were induced to make the sale for the sum finally agreed upon by the fraudulent representations of the defendant to the effect that the business was running down and that there were no profits. It is found that the defendant desired to purchase the Cotton interest for the lowest possible figure and treated his sister on a strictly business basis. In all his dealings with her there was a lamentable absence of brotherly regard. She knew this and knew he was not treating her frankly and fairly. His policy for the most part seems to have been one of silence rather than assertion and was pursued with ulterior designs. Mrs. Cotton before the settlement expressed her conviction that the appraisers were

influenced by the defendant. The court found that the plaintiffs were not misled by any of the defendant's alleged misrepresentations, and ordered the bill dismissed. To this order the plaintiffs excepted.

After the case was submitted, the plaintiffs moved for a further hearing upon the ground that they had discovered new evidence which would show that the defendant had stated in writing, that he allowed the appraisers to make a very low appraisal, which was forty per cent below the true value, and that he did this because he wished to buy the interest of the estate. Subsequently the plaintiffs filed another motion for a further hearing upon substantially the same ground. The court denied both motions as immaterial, and the plaintiffs excepted. The plaintiffs' bill of exceptions was allowed by *Marble*, J., at the September term, 1918, of the superior court.

*Albert Terrien, Doyle & Lucier* and *Charles J. Hamblett (Mr. Lucier* orally), for the plaintiffs.

*Charles W. Hoitt* and *Streeter, Demond, Woodworth & Sulloway (Mr. Demond* orally), for the defendant.

WALKER, J. The court's order dismissing the bill was in part based upon the finding that the executrix was not deceived in making the compromise agreement by the representations of the defendant, that the firm business had not been prosperous since the death of Mr. Cotton. The fact that Mrs. Cotton did not have entire confidence in the defendant and believed he would not treat her fairly in settling the firm affairs, and the fact that she employed counsel to assist her in that respect, were deemed to be important evidence in support of the conclusion that she was not in fact deceived by the alleged fraudulent representations or concealments of the defendant. Her lack of confidence in his acting as a trustee did not relieve him from the performance of the duties of a trustee, one of which is entire good faith and honesty; nor did it leave them in the position of independent parties having no special fiduciary rights and obligations. His representations as to the character of the business were material, and if he knew they were false, constituted a breach of the trust assumed by him as surviving partner. He is not entitled to enrich himself from the trust property, because she did not trust him. It was incumbent on him to make a full and fair disclosure of the value of the firm property; if he did not and in consequence he

obtained more than his share of the property, it is plainly inequitable that he should retain what he was not entitled to upon the ground that she was not deceived by his representations or did not believe what he said. She did not discharge him as her trustee. See cases hereinafter cited.

After the case was submitted, the plaintiffs moved for a further hearing upon the ground that new evidence had been discovered which would show that the defendant knew at the time of the settlement that the appraisal of the property, in view of which the settlement was made, was forty per cent less than the true value. This fact was not disclosed by him to the executrix; nor does it appear that he made any direct representation to her as to the value of the property. The court declined to receive the proffered evidence upon the ground that it is immaterial, since Mrs. Cotton did not rely on the misrepresentations of the defendant and was not deceived thereby.

In this situation the question is whether the fact that the defendant knew the inventory greatly undervalued the property is a material fact to be considered in this case. It is to be noted that there is no finding that before the settlement was made the executrix had released the defendant from any of his duties or obligations to her as a surviving partner. As she was acting in her capacity as executrix of her husband's estate and was therefore a trustee herself, her authority to waive his performance of his duties as a trustee is questionable. If she did not rely on what he said in regard to the partnership affairs and if the effect of her disposition in this respect might preclude her from insisting that she was misled by his false statement of material facts, it did not justify him in wilfully concealing from her matters of great importance to a fair and just compromise. Even if she was not misled by his previous misstatements of facts relating to the firm business, it does not follow that she was not misled by the inventory which, as the defendant knew, was far below the true value of the property, and which, presumably, he also knew she regarded as a tentative basis of the compromise. The finding that the final offer "purported to be based" on the inventory is inconsistent with the theory now insisted upon by the defendant, that she was not misled or deceived by the unfair appraisal contained in the inventory. It is difficult to understand why the evidence of the undervaluation and the defendant's failure to disclose to her the fact as he believed it to be, was not material on the issue of fraud in fact, or upon the issue of constructive fraud arising from the trust relations of the parties.

That a surviving partner is a trustee and the personal representative of the deceased partner a *cestui que trust,* with reference to the partnership property, is a well established principle in equity jurisprudence. Pars. Part., s. 345; 3 Pom. Eq. Jur. (4th ed.), s. 1088. It is also universally held that a trustee is bound to show upon a settlement or accounting with the beneficiary that he has managed the trust for the benefit of the latter and to make a full and fair disclosure of all facts within his knowledge, or which he ought as a prudent man to know, which are material to a full and adequate understanding by the beneficiary of the condition of the trust estate. In some cases it has been held that a trustee could not purchase the trust property, but in Perry, Trusts, s. 428. it is said: "The better opinion, however, is, that a trustee may purchase of the *cestui que trust,* or accept a benefit from him, but the transaction must be beyond suspicion; and the burden is on the trustee to vindicate the bargain or gift from any shadow of suspicion, and to show that it was perfectly fair and reasonable in every respect, and courts will scrutinize the transaction with great severity." See 2 Beach Trusts, s. 697.

In the case of a settlement between a trustee and the beneficiary by which the latter attempted to release and discharge the former without an accounting, in consideration of his agreement to support her during the remainder of her life, the court in *Re Hodges Estate,* 63 Vt. 661, 666 say: "It is only when it is made to appear to the entire satisfaction of the court that the beneficiary had full knowledge of all the facts bearing upon the settlement, and acted therein advisedly and without undue influence, that a contract of this character between trustee and beneficiary will be sustained."

This principle of equity is well stated in *Tennant v. Dunlap,* 97 Va. 234, 244, where it is said that the surviving partner "cannot place the representative of the deceased partner at arm's length and seek to obtain a profitable bargain for himself. Having generally a superior knowledge of the assets and their value, it is his bounden duty, in purchasing the interest of the deceased partner, to acquaint his representative with full information as to the assets, and the facts from which their value may be estimated or inferred. It is not sufficient that he does not withhold or conceal such information, but it is incumbent on him to disclose voluntarily all within his possession or knowledge from which a sound judgment as to the value of the interest may be formed. He cannot remain passive, but must make a frank and honest disclosure." In *Farnam v. Brooks,* 9 Pick.

212, it was held that trustees in bargains with the owner relating to the trust fund are obliged not only not to misrepresent and not to conceal, but also to disclose everything known to them, which, in the mind of a prudent man would be likely to affect the bargain; and if this is not done, though there may be no design to cheat, yet there is a constructive fraud. The cases of *Pearson* v. *Railroad,* 62 N. H. 537, *Lovett* v. *Morey,* 66 N. H. 273, and *Sparhawk* v. *Allen,* 21 N. H. 9, support this view. See also 1 Perry Trusts, *s.* 195; 2 Pom. Eq. Jur., *s.* 956; 1 Beach Trusts, *s.* 196; *Ludington* v. *Patton,* 111 Wis. 208, 239; *Wilbourn* v. *Kleinle,* 92 Md. 114, 128; *Bryne* v. *Jones,* 159 Fed. Rep. 321, 323; *Brown* v. *Cowell,* 116 Mass. 461, 465; *Heath* v. *Waters,* 40 Mich. 457, 465.

The fact that the defendant failed in his duty to the executrix in not disclosing to her the fair value of the firm property as he understood it, is made more convincing by the finding that he dealt with her on a "strictly business basis," that he pursued a policy of silence rather than assertion, having ulterior designs, and desired to purchase the property at the lowest possible figure. He was influenced by purely selfish motives, which it is the policy of the equitable principles above stated to prevent in cases of trusts. Whatever effect his positive assertions may have had upon his sister's mind, it cannot be doubted that his non-disclosure of the fact that the inventory was much too low was a clear breach of trust. If he had made the requisite disclosure it could not be said that as a prudent woman she would not have believed it and would not have been influenced by it in deciding upon the value of her interest in the firm. She was not influenced by it because he failed to inform her of it. It is said that she thought the appraisers undervalued the property. But it does not appear that she had any definite idea upon that subject. She certainly did not have the very definite knowledge possessed by him, that the appraisal was some forty per cent too low. The inference is very strong that if she had known that fact she would not have settled for the sum she received. He allowed her to act under a misapprehension of the value of the property, when it was his manifest duty to protect her from such an error of judgment. His non-disclosure resulted in a settlement which was greatly to his advantage and equally disadvantageous to her. This conclusion is based upon the assumption that the evidence, if received, would prove the facts alleged in the motion. The evidence therefore was material and should have been received. The fact that she employed counsel to assist her in the negotiations, who so far as appears was

not informed of the undervaluation of the appraisers is unimportant; it does not relieve the defendant from the duty of disclosing the truth.

*Exceptions sustained: new trial granted.*

All concurred.