# Jack's Appeal.

The distributive shares of the four minor children of a decedent were paid to their guardian D., who loaned three of these shares to F. on judgment bonds, payable respectively as each minor became of age, with interest annually. The account of D. was settled and confirmed in March 1872, and on his own petition he was discharged on "paying to his successor all moneys in his hands, with accrued interest thereon, belonging to the estate of said minors," and on the same day G., who was appointed his successor as guardian, took from D., as cash, an assignment of the three judgments against F. Two of the judgments were paid as they matured in 1873 and 1876 respectively. In 1877, F. made an assignment for the benefit of creditors, and her real estate proving to be insufficient to pay prior liens the third judgment was lost. The auditor found that the guardian had acted in good faith, under the advice of counsel, and was not guilty of negligence in the management of the trust; that at the time he accepted the assignment of the judgments the security was such as careful and prudent men would have regarded as good, and that the loss was caused by the extraordinary depreciation of real estate in 1873. *Held,* that the guardian was not guilty of such negligence as should cast upon him the burden of the loss.

May 7th 1880. Before MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. SHARSWOOD, C. J., and GREEN, J., absent.

Appeal from the Orphans' Court of *Lancaster county:* Of May Term 1880, No. 156.

Appeal of Mary E. Jack from the decree of the court dismissing her exceptions to and confirming the report of the auditor appointed to pass upon the exceptions to the account of William N. Galbraith, her guardian.

[Jack's Appeal.]

The facts, as found by the auditor, H. C. Brubaker, Esq., were these: William S. Davis was appointed guardian by the court on June 15th 1863 of the estates of William Jack, Matthew Jack, John C. Jack and Mary E. Jack (the exceptant), minor children of John Jack, deceased. In pursuance of an order of the court for the payment of the debts of the decedent, the farm belonging to the estate of the said decedent was sold to Mrs. Mary R. Ferguson by the administratrix at and for the sum of $80 per acre, consisting of one hundred and four acres and five perches, making an aggregate sum of $8332.50. This sale was confirmed nisi January 17th 1871, and no exceptions having been filed was absolutely confirmed. The administratrix filed her final account April 8th 1871, showing a balance in favor of the estate of $4811.64. This account was confirmed by the court. The balance exhibited in the account, as well as the whole fund, was comprised of the proceeds of said real estate, one-third of which was set apart according to law and fixed as a charge upon the said real estate for the use of the widow during her lifetime, leaving a net balance for distribution of $3207.76, which was distributed to the minor children and wards of said guardian, each ward receiving $801.94. This money, with the exception of the share of William Jack, the oldest of the wards, was invested by the guardian in the real estate of Mrs. Mary R. Ferguson, the purchaser of said decedent's real estate, the said guardian having loaned her the money and taken therefor three separate bonds, with warrants of attorney to confess judgments from her, which were entered in the Court of Common Pleas of this county on October 12th 1871. William Jack, one of the wards, became of age shortly after the money was received by the guardian from the administratrix of said decedent, and his share was paid to him then.

Three judgments, aggregating $3750, were entered against and became liens upon the said real estate of Mary R. Ferguson prior to the judgments entered by the guardian.

William S. Davis, as the guardian of the four wards, filed his account on April 5th 1871, which exhibited a balance in his hands of $3183.16. On March 18th 1872, the account having been confirmed absolutely nearly a year before, said guardian presented a petition to the Orphans' Court, in which he stated that he had filed his account and prayed that he be discharged from the management of said trust. Upon this petition he was discharged on condition that he pay over to his successor all moneys in his hands, with accrued interest thereon, belonging to the estate of said minors. On the same day, William N. Galbraith was appointed his successor. Galbraith then accepted from his predecessor, in lieu of actual moneys exhibited as the balance due the wards respectively, the three bonds and judgments above referred to for his three wards, Matthew, John and Mary E., each for the

[Jack's Appeal.]

sum of $801.94.    Galbraith, as guardian, subsequently collected
the several amounts of the judgments in favor of his wards,
Matthew and John Jack, and paid the same over to them on their
attaining the age of twenty-one years respectively.    He also col-
lected seven years' interest on the judgment in favor of Mary E.
Jack, the exceptant.

Mrs. Mary R. Ferguson, to whom the moneys of the wards
were loaned, made and delivered a deed of voluntary assignment
for the benefit of her creditors to William F. Beyer, Esq., the
counsel for exceptant, of all her real estate, in which was in-
cluded the Jack farm of one hundred and four acres, and another
farm of some fifty-six acres, with improvements.    The farm of
fifty-six acres was owned by Mrs. Ferguson in 1871, when she
purchased the other farm from the estate of John Jack, deceased.
The farm of one hundred and four acres was sold in 1879 by the
assignee for $1794.56, subject to the dower, and the fifty-six acre
farm in 1879 by the same person for $1512.    These amounts
comprised the whole fund in the hands of said assignee for dis-
tribution, there being no personal fund.    The judgment in favor
of the ward, Mary E. Jack, being a subsequent lien, was therefore
not reached.

Galbraith, as guardian of Mary E. Jack, the exceptant, filed his
account on February 7th 1879, exhibiting a balance in his favor
of $47.45.    In this account he took credit, inter alia, for the bal-
ance due on the judgment in favor of the ward, viz., $657.94 as
not collectable by reason of the insolvency of the defendant and the
loss of the security taken by his predecessor.    This account was
presented for confirmation nisi March 17th 1879, to which the
exception in question was filed on the same day.

The auditor's conclusions will be found in the opinion of this court.

The exceptions filed were dismissed by the court, Patterson,
A. L. J., and the report confirmed.    From this decree this appeal
was taken.

*W. F. Beyer*, for appellant.—The first guardian made the in-
vestment and transferred the securities to his successor, who was
surcharged their full amount with interest up to date of decree.
A guardian "is bound to exercise the same care and management
that a prudent man would exercise in his own affairs," otherwise
he is chargeable with simple or compound interest: Hughes's
Minors' Appeal, 3 P. F. Smith 500; Harland's Accts., 5 Rawle
333.    Loan on personal security is utterly inexcusable; Wills's
Appeal, 10 Harris 325; Daniel Wilson's Estate, 34 Leg. Int. 27;
Perry on Trusts, sect. 453.    A guardian who accepts depreciated
securities in payment of his ward's shares is chargeable with
their full value; McCahan's Appeal, 7 Barr 56.    He is bound to
examine the accounts of his predecessor; Shirk's Estate, 1 Lan.

13 NORRIS—24

[Jack's Appeal.]

Bar, Dec. 18th 1869. A guardian filed his account, taking credit for investment lost, and was surcharged with interest up to date of decree in McCahan's Appeal, *supra;* Worrell's Appeal, 11 Harris 50.

*J. W. F. Swift* and *Geo. M. Kline,* for appellee.—The duty of a guardian is for investment, not for collection and distribution. The first guardian took his judgments, payable as each ward arrived at age. He made them liens on real estate which, at the time, had a value of over $6000 beyond their existing encumbrances. He was no stranger to this property. All the parties lived in the same neighborhood, farmers, and were competent to exercise a sound and reasonable discretion. When Mr. Davis was discharged and Mr. Galbraith, in 1872, was appointed in his stead, nothing had occurred to make the judgments of doubtful security. On the contrary, subsequently the first and second maturing judgments of his wards were paid. Mr. Galbraith acted with common skill, prudence and caution, and has not been guilty of wilful or supine negligence, or culpable indifference to the interests of his ward. To surcharge him with a loss of part of the security unrecovered, would hold him to a measure of responsibility that would deter most persons from assuming the duties of such a trust.

Mr. Justice STERRETT delivered the opinion of the court, May 24th 1880.

The mixed question of law and fact presented to the learned auditor and court below was whether the appellee was justly chargeable with such negligence in the management of the trust funds committed to his care as should cast upon him the burden of the loss that was sustained.

The investment which proved to be insecure, and from which the loss resulted, was made by Mr. Davis, the first guardian of the four minor children of John Jack, whose administratrix settled her account in April 1871. The distributive shares of the minors, amounting to $801.94 each, were paid to the guardian, who loaned three of the shares to Mrs. Ferguson on judgment bonds, payable respectively as each minor came of age, with interest annually. About the same time he paid the remaining share to the eldest son who had then attained his majority. The account of Mr. Davis was settled and confirmed in March 1872, and on his own petition he was discharged on paying "to his successor all money in his hands, with accrued interest thereon, belonging to the estate of said minors;" and on the same day the appellee who was appointed his successor in the guardianship took from him, as cash, an assignment of the three judgments against Mrs. Ferguson. Two of the judgments which matured respectively in 1873 and 1876, with interest

thereon as it accrued, were promptly paid and properly applied. The remaining judgment, representing the share of Miss Mary E. Jack, the appellant, matured April 1st 1877, to which date the interest was paid, and subsequently $144 was paid on account of the principal. Mrs. Ferguson then became embarrassed, and made an assignment for the benefit of creditors, but the fund realized from the sale of her real estate proved to be insufficient to pay prior liens; and the residue of the judgment held by appellee was thus lost.

The auditor found that the appellee, in the performance of his duty as guardian, acted in good faith, under the advice of counsel learned in the law, and was not guilty of negligence in the management of the trust; that at the time he accepted the assignment of the judgments, two of which were afterwards paid, the security was such as careful and prudent men would have regarded as good and sufficient, and that the loss which ensued was caused by the extraordinary and unexpected depreciation in real estate which followed the panic of 1873. It is not alleged by the appellant that there was any carelessness or mismanagement on the part of the guardian from which loss resulted, except in the single particular of accepting the judgment as cash from his predecessor in the trust; and the ground of complaint as to that is, that the judgment was not the first lien on the real estate.

In determining whether the act complained of was such as should render him liable for an unexpected loss resulting from an extraordinary shrinkage of values, especially of real estate in that neighborhood, all the facts and circumstances should be taken into consideration which seems to have been done by the auditor in this case. The investment was made by appellee's predecessor with special reference to appellant, payable when she came of age, with interest annually in the meantime, so that the fund might be constantly productive; and, notwithstanding the prior liens, the margin in the spring of 1872 was so much that the security was then regarded as safe and ample. Negligence cannot fairly be inferred from the fact that it ultimately proved to be insufficient. Many investments made about the same time by the most careful and prudent have resulted disastrously on account of the general depreciation of real estate during the years succeeding the panic. If the appellee had refused to take the judgment, and had insisted on payment in cash, in all probability considerable time would have elapsed before he could have found a safe investment for the money, and then the complaint might have been that he had refused a safe and permament investment already made. The appellee was well acquainted with the property on which the judgment was a lien, and was competent to exercise a sound and reasonable discretion in regard to the sufficiency of the security. The auditor has found that in this, as well as in other respects, he acted in good faith and

with ordinary care and prudence. It is, of course, a great hardship that the appellant should lose so large a portion of her small patrimony, but it would be a still greater hardship to compel her guardian to make good the loss unless it was occasioned by his carelessness. It has been said that the harshest demand that can be made in equity is to hold a trustee answerable for what was never in his hands, or for a loss not caused by his wilful default. In Eyster's Appeal, 4 Harris 372, it is said: "If guardians are to be held responsible for all negligence, and are not allowed the exercise of a reasonable discretion and prudential care in managing the property of their wards, it will deter prudent men from assuming the office, which, in itself, is sufficiently onerous, and already undertaken by such men with reluctance."

While we regard the question in this case a close one and by no means free from doubt, we are of opinion that the conclusion reached by the auditor and the court below was correct, and that the decree should stand.

> Decree affirmed, and appeal dismissed, at the costs of the appellant.