Estate of Ann Klenofski and Felix Klenofski, Minors.

Argued October 11, 1929.

Before PORTER, P. J., TREXLER, KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*David R. Griffith, Jr.,* for appellant, cited: Carr's Estate, 14 Phila. 265; Schurr's Estate, 13 Phila. 353; McCahan's Appeal, 7 Pa. 56; Lamb's Appeal, 58 Pa.

142; Spath's Estate, 144 Pa. 383; Dietterich v. Heft, 5 Pa. 87; Mackins' Estate, 7 D. R. 126, 20 C. C. R. 587; Jack's Appeal, 94 Pa. 367.

*John M. Dervin,* for appellee, cited: Clauser's Estate, Huy's Appeal, 84 Pa. 51.

OPINION BY CUNNINGHAM, J., December 12, 1929:

This appeal is from a decree of the orphans' court of Philadelphia County, in banc, dismissing appellant's exceptions to, and confirming absolutely, the adjudication of the auditing judge upon the accounts she was ordered to file as guardian of two minor children. The accounts were adjudicated together and the learned auditing judge, GEST, J., found from the testimony of the guardian, called for cross-examination, that she had been so unfaithful to her trust that she was not entitled to any commissions, should be removed as guardian and must replace in cash certain sums which she had lent to her daughter and son-in-law, with whom she lives, out of the estates of her wards.

The mother of the minors died November 18, 1916, and the father, Felix Klenofski, March 10, 1919; Ann Klenofski was born May 18, 1912, and Felix, Jr., May 30, 1914. Appellant was appointed guardian of their persons and estates March 24, 1921,—Ann then being in the care of St. Joseph's and Felix of St. Johns Orphan Asylum. The estate of each minor consisted of War Risk Insurance in the sum of $5,000, payable monthly by the Bureau of War Risk Insurance at the rate of $28.75 per month, and compensation in the sum of $15 a month until each should attain the age of eighteen years. At the instance of the Regional Attorney for Philadelphia of the United States Veterans Bureau appellant was required to file an account in each estate.

In the estate of Felix Klenofski appellant charged

herself with total receipts of principal from the government to the amount of $3,074.84 and claimed credits in the aggregate amount of $1,502.50, leaving a balance of $1,572.34. Included in the credits was an item for commissions at five per cent., amounting to $153.74. The income account showed charges aggregating $278.22 and a credit for commissions at five per cent. of $13.91. The total amount due the estate, as shown by the account, was $1,836.65. The balance admitted by appellant's account to be due the estate of Ann Klenofski, arrived at by the same method and deducting the same commissions, was $1,611.36. The auditing judge surcharged appellant with the commissions of $167.65 in each estate, thereby making the amount due from her to the estate of Felix Klenofski $2,004.30, and to the estate of Ann Klenofski $1,779.01, or a total of $3,783.-31. From appellant's testimony at the audit it appeared that she had on deposit only $1,402.48 of the $3,448.01, admitted by her accounts as filed. The following findings of the auditing judge with respect to appellant's disposition of the missing $2,000 are sustained by the testimony: ''The testimony of Annie E. Smith, the guardian, under cross-examination, was in many respects inconsistent and contradictory, but it plainly appeared that she had used $2,000 of the minors' money in assisting her daughter, Mary E. Allen, and her son-in-law, Paul Allen, in the purchase of two houses, 3406 N. 19th Street, belonging to Mary E. Allen (at which house the guardian lives), and 3402 N. 19th Street, belonging to Paul Allen. The guardian claimed that this $2,000 was secured by two third mortgages of $1,000 each, secured on the said premises, but the mortgages were not produced, and under pressure she admitted that the mortgages were not in existence and that the loans were represented by notes of her daughter and son-in-law. Even these were not produced, and the auditing judge views her entire testi-

mony with grave suspicion. She also stated that 3402 N. 19th Street was encumbered by a $3,000 first mortgage and a $3,000 building and loan mortgage, and 3406 N. 19th Street was encumbered by a $6,000 first mortgage and a $2,300 second mortgage. Her testimony was further inconsistent with respect to the dates on which this money was used for the benefit of her daughter and son-in-law.''

The only justification offered by appellant in her testimony was that the first loan had been made under the advice of counsel for the orphanage, through whom she had been appointed guardian, and that she was desirous of obtaining a higher rate of interest than the bank would pay. The credibility of the witness was for the auditing judge who expressed his opinion upon that matter and stated the inferences which he drew from her testimony in no uncertain terms: "As a whole the testimony showed a most flagrant violation of duty by the guardian. Even if she had invested the money in third mortgages, she would be bound to replace them with cash, but I do not credit her testimony. Her acts amounted to a bald embezzlement, all the more blameworthy because her wards were orphans, whose helpless condition should have rendered her the more zealous to safeguard their estates. Mr. Dervin [Regional Attorney] stated that he had no other objection to the account and to the credits taken in the account, except to the commissions, which were objected to. It needs no citation of authorities to justify the auditing judge in striking these out. Commissions are allowed as compensation to a faithful fiduciary and not as a reward for dishonesty.''

If there were extenuating circumstances, such as are suggested by counsel for appellant in his brief, they should have been developed at the hearing, at the conclusion of which he was asked by the auditing judge whether he had anything further to offer in behalf of

his client. It is admitted in the brief for appellant that "the two investments complained of and excepted to are not what are termed legal investments and the guardian is personally responsible to the trust for the amount thereof;" but it is argued that she should not have been deprived of her commissions. Jack's Appeal, 94 Pa. 367, is cited and relied upon in her behalf, but that is a case in which the investments were made by the guardian in good faith under the advice of counsel and upon security which a careful and prudent man would then have regarded as ample and the loss was occasioned by an extraordinary depreciation in real estate values. Here we have a case of a guardian practically using a considerable portion of the estates of her wards for her own benefit and that of the members of her family. Such conduct brings this case more nearly under Clauser's Estate, 84 Pa. 51, in which the trustee applied a part of the trust funds to his own use and in which it was held, citing a number of authorities, that to entitle trustees to compensation it is requisite that their duties be performed at least with common honesty and that misconduct in a trustee, especially when willful, is always followed by a loss of commissions.

The findings of an auditing judge, approved by the court in banc, will not be reversed except for manifest error. We are not convinced that the conclusions reached in this case should be disturbed.

The decree is affirmed at the costs of appellant.