## Gandolfo's Estate

Before Lamorelle, P. J., and Gest, Henderson, Van Dusen, Stearne and Sinkler, JJ.

*Henry I. Koplin* and *Michael A. Foley*, for exceptants.

*M. T. McManus* and *H. Lawton Russell*, contra.

702

STEARNE, J., December 16, 1932.—Exceptions to the report of an auditor appointed by this court to audit the accounts of the trustees under the will of this decedent, James Gandolfo, and that of his wife, Colomba Gandolfo, bring the records in both cases before us for review.

The records are extremely voluminous; the testimony approximates 700 pages; the reports of the auditor are necessarily long and involved; of the seven children, four have filed ninety-nine exceptions, one has filed seven exceptions and another twenty exceptions; the seventh child, while represented by counsel, has not excepted, and, by letter attached to the report, protests against sharing any of the expenses involved in the litigation.

Because of the inexcusable conduct on the part of the trustees, there has been unnecessary confusion in the management and administration of both estates. In order comprehensively to encompass the controverted questions in either estate, the true situation in both estates must be considered and treated as a whole.

James and Colomba Gandolfo (the decedents) were the parents of the seven children (all of age and sui juris) who are now before us. James Gandolfo, the father, died in 1915. By his will, duly probated, he gave a legal life estate to his wife, Colomba; upon her death he bequeathed his entire estate to his two sons, Louis and George (his executors), in trust, to pay the entire net income equally among his seven named children, for the period of ten years after the death of his wife, and then to convert the real estate and distribute the entire estate equally among his said seven children. Colomba Gandolfo, the wife, survived her husband and died in 1921. She also left a will, which supplemented that of her husband. Colomba passed her entire estate to the said two children, Louis and George (also her executors), in trust, to pay the entire net income equally among the seven named children, for the period of ten years after her decease, and then to convert the entire estate and distribute the principal equally among the said seven children. Her will was duly probated and letters testamentary granted to Louis and George who, as above stated, were already the executors of her deceased husband's estate.

According to the accounts, which were finally filed under order of this court, it appears that James Gandolfo, the father, died possessed of an approximate gross personal estate of $6700, and about twelve pieces of improved real estate. Colomba, the mother, seems to have died possessed of about $6300 in personal estate, four ground rents and about nine pieces of real estate.

No inventories and appraisements were ever filed in either estate, and no accounts were filed as executors. The auditor finds as a fact, to which no exceptions have been filed, that this was by agreement of all parties. Louis, one of the executors and trustees, assumed the sole and exclusive management and administration of both estates. George, the other executor and trustee, did nothing at any time in connection with the administration and management in either estate. Both estates were freely commingled and handled as one. No books or records were ever kept until within a comparatively short time before the termination of the trust. The only data available were scraps of paper, rent statements and memoranda, supplemented with verbal statements and explanations of Louis, to which the attorney for Louis was necessarily relegated in attempting to assemble and state the accounts of the trustee. Louis alone signed the accounts. George, the cotrustee, repudiated the accounts in their entirety, but submitted none of his own in their place. Indeed, it is quite apparent that he was and is actually incapable of preparing and submitting an account under the facts of this case. The accounts are really those of executors and trustees. No useful purpose would be served, however, in requiring execu-

tors' accounts followed by trustees' accounts. All trusts have ended, any possible rights of creditors have long since been determined, and the estate merely awaits distribution. While this practice, generally speaking, should not be countenanced, nevertheless, under the facts in this case, there would seem to be no other alternative than to audit the accounts and decree distribution. We note that the accounts are signed by only one of the trustees.

As the auditor in effect has been obliged to state accounts based upon the account submitted by one trustee and the testimony of the parties, we shall treat the accounts as though they were stated by the auditor under direction of this court, and consider them as the accounts of both trustees. In any event, under the circumstances of this case, both trustees are jointly liable: Stong's Estate, 160 Pa. 13.

The learned auditor and counsel have had imposed upon them Herculean labor in stating and auditing the accounts because of the inadequate and meager records submitted, as well as the hostile, evasive and questionable attitude of Louis. The audit required thirteen meetings, numerous exhibits and a large volume of testimony, and after the auditor filed his reports there have been an unnecessarily large number of exceptions filed by the parties in interest. For convenience, we shall treat the substantive questions in controversy without regard to whose exceptions or which exceptions apply.

*Surcharge for use and occupancy of No. 800 Lombard Street, also known as Nos. 500-502 South Eighth Street*

The auditor has surcharged Louis J. Gandolfo in the sum of $5805 as compensation to the estate of James Gandolfo, deceased, for the trustee's personal use and occupancy of said premises. The testimony discloses that these premises constituted the home of the decedents until their respective deaths. Louis and Mae, the unmarried children, resided with their parents and remained in the premises after the death of the survivor. About a month after the death of the mother (who survived the father) all seven parties in interest signed a paper reading as follows:

"Philadelphia, March 5th 1921

"We the under-signed do hereby agree that Louis J. Gandolfo, and Mae Gandolfo, shall occupy the Second and Third floors and also the Office in the rear of First floor, at 500-502 So. 8th Street (free of rent), with the understanding that if there is an opportunity to sell said property they must give possession to the purchaser or purchasers within at least sixty Days.

"(A. M. La B.)    ANNIE M. LA BRASCA
"B. D.         BESSIE DONATO
              "GEORGE GANDOLFO
              "LAURENCE GANDOLFO
              "JULIA G. SCHAD
              "MAE GANDOLFO
              "LOUIS J. GANDOLFO"

It is to be observed that the writing is not under seal. It seems immaterial whether this instrument is a contract or a mere revocable license to Louis and Mae to occupy the premises in question. However, it is a paper writing signed by all of the parties. We can find nowhere in the testimony that any of the parties who signed the instrument have ever withdrawn the permission which is there granted.

The trustee in his account in James's estate omits all rent from these premises. In his "foreword" to his account the trustee explains the omission of rent in the following language:

"The . . . failure of the accountant to pay rent is in pursuance of a verbal agreement of all parties in interest that your accountant should . . . pay no rent as extra compensation to him for special services in connection with the management of the affairs of the estate."

The auditor, upon the contrary, finds that this paper was signed upon the verbal agreement of Louis that he would charge no commissions for his services, and that in opposition to this verbal agreement Louis in fact did charge commissions, starting with the rent collection at the very next quarterly statement thereafter, and continued so to charge commissions to date; that, therefore, the consideration for the agreement failed, and that it was, therefore, null and void. Furthermore, the auditor found that after some family disturbance, and as a non-consummated compromise, the accountant did offer to pay rent, which the auditor ruled was an admission by Louis of the right of the beneficiaries of the trust estate to charge for use and occupancy of the said premises. We are unable to agree with such findings by the auditor. All seven persons in interest joined in this written document permitting both Louis, the trustee, and his sister, Mae, to reside, rent free, in the premises. The only reservation, as stated in the paper itself, was that Louis and Mae agreed to vacate sixty days after sale of the property. No sale has occurred and no revocation has been served by any of the parties upon either Louis or Mae. As we understand the rule of our Supreme Court as enunciated in Speier v. Michelson, 303 Pa. 66, unless there was fraud, accident or mistake in omitting the alleged varying contemporaneous parol agreement from the writing, it may not be considered. Furthermore, the evidence to establish such an agreement must be of the same quality as would be necessary to reform a written instrument: Pender v. Cook et al., 300 Pa. 468, 473; Martin et al. v. Berens, 67 Pa. 459, 463; Gianni v. R. Russell & Co., Inc., 281 Pa. 320; Emmons v. McCreery, 307 Pa. 62.

We are persuaded that the evidence offered before the auditor is not clear, precise and indubitable. Furthermore, there is no evidence that the alleged parol agreement, whether as averred by the trustee or as claimed by the other parties in interest, was omitted from the written instrument by fraud, accident or mistake. After a full consideration of all the testimony, we will not disturb the provisions of the written paper admittedly executed by all the parties. We sustain the exceptions to this surcharge.

*Finding of the auditor that rents accumulated and in the hands of the accountant, which were collected from five pieces of real estate in the names of four of the individual beneficiaries, belong to the estate of Colomba Gandolfo, and a resulting surcharge therefor.*

A curious situation develops under this heading. James Gandolfo, the father, with his own funds, purchased five houses at various times. One property he placed in the name of Louis; the other four properties he placed in the names of Louis, Bessie, Mae and Julia, as tenants in common. The auditor finds that James made a *verbal reservation* to the deeds whereby he retained the income from these properties during his own lifetime and for the lifetime of his wife, and that only after the death of both James and Colomba should the named record owners assume full ownership thereof. The auditor finds that James did receive and use the rents during the period of his own life; that Colomba did not use, but accumulated, the rents during her lifetime (or rather that the trustee, Louis, accumulated them for her), and that immediately upon Colomba's death the four grantees named in the deeds took possession of the said five properties and have since assumed full ownership thereof; that because six years have expired since the death of Colomba, the statute of limitations has

prevented the parties in interest from claiming that the rents so accumulated did not belong to Colomba. The auditor has surcharged the trustee with these rents and has added to the account in Colomba's estate the sum of $4612.19. We deem this error.

At the outset, any verbal reservation to a deed violates the statute of frauds and is contrary to all of the cases respecting the alteration of a written instrument by parol which we have cited in the foregoing section of this opinion.

But, in addition, the orphans' court has no jurisdiction in such an inquiry. We are limited in jurisdiction to property which is admittedly that of the decedent: Cutler's Estate, 225 Pa. 167; Williams's Estate, 236 Pa. 259. It is to be noted that the source of these rents was from real estate, the title to which was *never* in either estate. Neither decedent, at any time, ever had title to any of these properties. It is true that the decedent, James, paid the consideration money, but he had the legal right to give the real estate to his children. Even though a resulting trust is claimed, certainly this court would have no jurisdiction where the rights of living parties, who do not claim title through the estate, are concerned. The rents in question are demanded by the living parties by reason of their inter vivos deed, wherein even the decedents are not parties. Whatever may be the equities, this court cannot determine them: Cutter's Estate, 286 Pa. 505; Erie County et al. *v.* Lamberton et al., 297 Pa. 406; Kretzer *v.* Murry, 297 Pa. 451. This item is accordingly stricken from the account, without prejudice to the rights of any of the parties claimant.

### Compensation to trustees

(a) Louis J. Gandolfo, trustee. After carefully considering the auditor's finding No. 21, which unquestionably appears to be fully warranted by the evidence, we are at a loss to understand why Louis J. Gandolfo, trustee, should be entitled to any compensation whatsoever. After a recital of all of the trustee's wrongdoing—extending from actual misappropriation and fraud to gross and wanton carelessness, mismanagement and inattention—the auditor allows such a trustee 2½ per cent. commission on the rent collections and disallows all other compensation. We are of opinion that Louis J. Gandolfo is not entitled to compensation. These are some of the things which this trustee did, despite which he requests compensation:

1. Kept no books or records whatsoever from 1915 to 1925. The account was assembled from lead pencil and ink memoranda, slips of paper, stubs of receipts and rent statements.

2. Commingled James's and Colomba's estates, which even yet have not been fully disentangled.

3. Deliberately falsified records.

4. Manufactured a bill for work, labor and materials that were not actually performed or delivered.

5. Accepted and retained money, in small amounts, for services which he did not perform, in connection with work done by his brothers, George and Laurence.

6. Deliberately entered overcharges, keeping the excess for himself.

7. Unnecessarily maintained a balance of a loan to himself at 4½ per cent. interest, while charging the other beneficiary six per cent. interest.

8. Made an $11,000 loan of trust funds to himself without any security whatsoever except his own judgment note.

9. For over a year kept the income of the estate in cash and paid the expenses in cash, which he maintained in his own individual safe deposit box and which fund was only restored upon direction of the auditor. There is no record what-

soever of these receipts and expenditures except those which he has chosen to divulge.

10. Retained and appropriated $250 which he received as down-money on a forfeited sale of the trust real estate on the unsupported allegation that this item was a gift to him by the other beneficiaries.

11. Collected fire insurance damages in the sum of $356.47 and appropriated it to his own use after he had had the tenant (at the tenant's own expense) repair the fire damage.

12. Secretly received $200 from tenants which he appropriated to his own use for the privilege of having him, as trustee, approve of a transfer of leases.

13. Charged commissions for collecting from himself principal and interest which he owed the estates.

For the foregoing reasons, as well as many others of minor importance, we disagree with the auditor that "it would be unduly severe to deprive [this trustee] of all compensation for a vast amount of work." Manifestly, this trustee did not have a proper conception of the difference between "mine and thine." We are of opinion that it is eminently just and equitable to refuse such an individual compensation when he has been so obviously unfaithful, if not actually dishonest, in the administration of the trust.

As was said in Klenofski's Estate, 97 Pa. Superior Ct. 502: "Commissions are allowed as compensation to a faithful fiduciary and not as a reward for dishonesty." See Clauser's Estate, 84 Pa. 51; Michalewski's Estate, 4 Erie Co. L. J. 72; Hart's Estate (No. 4), 203 Pa. 496, 500. All compensation to Louis J. Gandolfo, as trustee, is stricken from the accounts.

(b) George Gandolfo. We do not think it proper to permit George Gandolfo, this cotrustee, to receive any compensation. For over fifteen years he has been a supine and complacent trustee. We note that in 1927, when the parties in interest sought an accounting as executors, he joined Louis in resisting the effort. In 1931 he answered the citation for an accounting in a separate answer and stated: "The accounts and records as trustees mainly consist of collections of rents and disbursements covering the period of fifteen years." He stated that he was "ready and willing to coöperate with his cotrustee in stating an account," and requested that because of the "magnitude of work involved," they be given time. There is nothing in the record to reveal where George ever participated, at any time, in the management and control of these estates. Apparently, at times, he did do repair work on the real estate, and so did his brother, Laurence, but in each case they were paid for their labor. True it is that Louis dominated the situation and excluded George from all consideration. Nevertheless, George had equal duties to perform. While there is not the slightest suggestion of wrongdoing upon George's part, he could have acted, had he so chosen, to have required proper records, accounts and accounting, and to have insisted upon actively participating in the management and administration· of the estate. He did coöperate before the auditor, but so did all of the other interested parties. He refused to adopt Louis's accounts when filed, as well he might, but he did not, and in fact could not, submit accounts of his own. We do not consider that such a supinely negligent, inattentive and complacent cotrustee should be entitled to any compensation whatsoever. The award to George Gandolfo, cotrustee, of one per cent. upon all the debits in both accounts is hereby stricken therefrom.

### Counsel and auditor's fees

The auditor very properly struck from James Gandolfo's account a counsel fee of $1500 to the attorneys for the accountant, and a similar fee of $1000 to

Colomba's estate (a total of $2500), because the said counsel fees had not been actually paid.

After due consideration, we have concluded not to disturb what the auditor allowed Mr. Foley as attorney for Louis J. Gandolfo. The fee was $1250, $500 of which he allocated to the estate of James, and $750 to the estate of Colomba. There can be no doubt that Mr. Foley, an extremely able and upright member of this bar, fully earned the fee which was allowed as counsel for the trustee, and which service inured to the benefit of both estates. Nevertheless, under all the circumstances, all services in value over and above that which the auditor allowed may very properly be compensation which Louis J. Gandolfo may owe Mr. Foley for his services in defending the trustee, and is a matter with which this court is not concerned.

George S. Russell, Esq. (now deceased), appeared for George Gandolfo, trustee, and for Laurence Gandolfo, one of the beneficiaries. Mr. Russell requested and was allowed $1000 for his services—$500 in each estate. We cannot permit this award to stand. George neither adopted Louis's account nor submitted one of his own. Apparently, the only affirmative thing which George ever did was to take out letters testamentary. True it is that Mr. Russell attended numerous meetings and ably assisted in cross-examining Louis and other witnesses, but he represented in fact two individual interests. George Gandolfo assumed no part in the preparation of the accounts, nor did Mr. Russell have any part in their preparation. Mr. Russell's estate must look to George and to Laurence for any compensation. The award of $500 in each estate to George S. Russell, Esq., is stricken from the account.

M. T. McManus, Esq., representing one of the seven parties in interest, presented his claim and was awarded a $1000 counsel fee upon the theory that it was through his efforts an accounting was had, and that Mr. McManus was instrumental in causing a substantial sum to be refunded to the estate. We commend the learning, energy, labor and acumen of Mr. McManus. However, we regret to be obliged to refuse him compensation from the estate. He was serving an individual client. True it is that his efforts, exercised in his own client's behalf, benefited all. However, there is no warrant, so far as we are aware, for awarding compensation from the assets of an estate to counsel for one or more beneficiaries, at the expense of all, irrespective of how valuable such services may have proven. Mr. McManus must also look to his client alone for compensation and not to the estate.

So far as both Mr. Russell and Mr. McManus are concerned, we are of opinion that this is a case calling for the application of the general rule that each party to adversary litigation is required to pay his own counsel fees, and not the exception where services protect a common fund: Hempstead et al. v. Meadville Theological School, 286 Pa. 493.

We will not disturb the compensation of the learned auditor. Not only has he fully earned his fee but the parties in interest have agreed to it. While the court in banc may not agree with the auditor in all of his findings and conclusions, nevertheless, his intelligent and extensive labor has been productive of assembling and emphasizing the facts and enabling the court to apply what we deem to be the just and equitable settlement and distribution of the funds of the trust estates.

### Costs of audit

The auditor's twenty-fourth finding of fact reads:

"The necessity for appointment of an auditor and the long and expensive hearing before the auditor were caused, almost wholly, by the actions of Louis J. Gandolfo as outlined in the twenty-first finding hereof."

The twenty-first finding of fact is a summary of the misdeeds of Louis, which are truly amazing. Despite this finding, the auditor in his twenty-seventh finding says:

"In view of the mistaken belief of the rights of a trustee held by Louis J. Gandolfo, and his services in and about the real estate, he should not be penalized with the costs and expenses of the audit, and the same are awarded out of the fund."

Evidently the "mistaken belief" of Louis was that he himself was the "patriarch" of the Gandolfo family, and that he could do exactly as he pleased with the trust estate, without restriction, even to the extent of using it for his own benefit. We cannot excuse any such belief, nor give any credence to it whatsoever. We are of opinion that because of Louis's wrongdoing, incapacity and negligence, this expensive audit became necessary. We decide that he alone must bear the expenses and not the estate. We will allow Mr. Foley's fee to be paid from the funds in the estate, but the auditor's fees, the stenographic charges, witness fees, and all other costs and filing charges must be charged to and against Louis J. Gandolfo's share in distribution in these estates.

## Incidental surcharges

We agree with the auditor that Louis J. Gandolfo, trustee, should be surcharged with the item of $250 forfeited down-money on the sale of part of the trust real estate, and that Louis may not keep the said deposit as a gift. The evidence certainly is not of such quality and quantity as would sustain a gift to a fiduciary. We also agree with the auditor that the trustee should be surcharged with the following items:

1. $33.08, a false credit for work and labor done and materials furnished, which in fact were never performed or delivered.

2. $200 received and retained from tenants to secure his approval of assignments of leases.

3. $356.47 collected for fire damage and which Louis appropriated to his own use after he had had the tenant, at the tenant's own expense, repair the damage.

All other items of adjustment and surcharge and refusal to surcharge by the auditor are affirmed.

As we have reviewed this record, the conclusions we have reached are not to be regretted on the ground they may do a possible injustice to any of the parties. We have withdrawn from consideration one item which is clearly not a part of the estate; we have refused to compensate an unfaithful, if not an actually dishonest, trustee; we decline to compensate a cotrustee who has done absolutely nothing towards the administration of the estates; we have charged the estate with a reasonable counsel fee, because the accounts were essential and the parties themselves did not require an accounting for many years; we charged the share of the delinquent trustee with the costs of this expensive audit which was rendered necessary by the trustee's own acts; we refused counsel fees to counsel for individual parties in interest, and relegated them to their respective clients for payment; and, finally, we surcharged the trustee for all moneys illegally extracted from the estates, but refused to surcharge where the parties, in writing, granted gratuitous use of certain real estate. The trusts have terminated and the estates are now ready for distribution. For this reason alone we refrain from summarily removing both trustees, one for his wrongdoing and the other for his supine negligence and indifference. The net result is to restore to each of the seven children (including each trustee) their equal one-seventh share of principal and income, without improper deductions and charges.

It seems a useless task to rule upon all of the 126 exceptions filed by the various parties. All of the exceptions referring to matters wherein the auditor's report has been reversed or modified herein are sustained; all other exceptions are dismissed, and as modified the report is confirmed.

Counsel for the accountant is directed to submit to the auditor schedules of distribution in accordance with this opinion, and, when approved as to form by all parties or their counsel, they are to be submitted to the auditor for his approval, and, when so approved, are to be annexed to the auditor's reports and to form parts thereof.