## Fluck Estate

*Blair N. Reiley, Jr.,* and *John M. Dervin,* for exceptant.

*Samuel A. Montgomery,* contra.

VAN RODEN, P. J., October 26, 1949. — The late minor was the sister of Edward Weeks Beebe who was killed in action on March 3, 1945, while serving as a member of the armed forces of the United States of America. At the time of his death, there was in force a National Service Life Insurance policy in the face amount of $10,000 of which the minor was the beneficiary. The Chester-Cambridge Bank and Trust Company was duly appointed guardian of the estate of the minor on October 22, 1945. The only asset which came into the hands of the guardian was the aforesaid policy. In the exercise of one of the options provided by the terms of the policy, the guardian, with the approval of the court, elected to receive monthly payments of $34 over a period of 295 months. Thereafter, payments totaling $1,774.40 were actually received by the guardian during the minority of the ward, leaving a balance of $8,255.60 to be paid directly to the late

minor in the future. In its account, the guardian claimed credit for commissions at the rate of five percent on the $1,774.40 which actually passed through its hands, or $88.72, and at the rate of two percent on the $8,255.60 as yet uncollected, or $165.11, or total commissions of $253.83. On July 28, 1949, the late minor signed the usual form of certificate appended to the statement of proposed distribution, requesting the court to confirm the account and award the balance for distribution unto her. Thereafter, apparently upon advice received from the Veterans Administration, the late minor filed an exception to the account, objecting to the credit for commissions claimed at the rate of two percent on $8,255.60, the objection being that the funds never came into the hands of the guardian and had never been part of the late minor's estate.

In the opinion of this court, the Veterans Administration performs a very useful service in supervising the affairs of minors coming under its jurisdiction, and is to be commended for the earnestness and zeal employed in the protection of the rights of its wards. In the instant case, however, the court believes that the objections to the credit claimed for commissions is based upon a misunderstanding of the nature of the asset which came into the hands of the guardian. It is not the cash actually received by the guardian pursuant to the terms of the policy, but rather the policy itself which was received and administered by the guardian.

From the evidence submitted to the court, it appears that the guardian's activities included conferences with counsel and ward and careful study as to the proper option to elect for the best interests of the minor. The work of the guardian included four trust committee studies and recommendations followed by authorization by the guardian's directors, 10 telephone toll

conversations, four analyzations by the trust committee, with recommendations accepted and approved by the board, 19 letters received and studied, 28 letters drafted, written and mailed, one detailed periodical account completed, checked, verified and submitted to the Veterans Administration, one detailed court accounting, conformed copies furnished Veterans Administration and parties in interest, 50 principal items received and put through trust ledgers, 43 distribution items completed and put through ledgers, 47 postings to investment cards, making 140 total postings, costing at least 10 cents per item and 48 checks prepared, issued and mailed at a cost of at least 10 cents per item. In addition to attention to the investment, the guardian gave its careful consideration to many matters involving the personal problems of the ward including questions of attending school, living arrangements, eye glasses, trousseau arrangements and other personal items, as reflected in the distribution account.

It is quite obvious, therefore, that compensation limited to commissions at the rate of five percent on the cash actually received by the guardian of $88.72 would be utterly inadequate to compensate the guardian for the valuable services rendered in this case.

A guardian, as any other faithful fiduciary, is entitled to compensation: Klenofski's Estate, 97 Pa. Superior Ct. 502 (1929). The amount of compensation depends upon the size of the estate, the length of guardianship and the labor and responsibility incurred: Scott's Estate, 15 Pa. C. C. 316 (1894). Commissions, being intended as compensation for time, trouble and responsibility, should be graduated by these objects without strict regard to the amount received or disbursed: Burdick's Estate, 6 Lack. Jur. 361 (1905). Ordinarily, the guardian is allowed commissions of five percent computed on the whole estate coming into the guardian's hands: Fessenden's Es-

tate, 1 Kulp 139 (1880); Morgan's Estate, 31 Pitts. L. J. 280 (1884). Although as a general rule a guardian is not allowed regular commissions on a fund that does not come into its hands, it may be allowed a round sum for trouble and responsibility: Bell's Estate, 2 Parson 200 (1846). As stated by the Supreme Court in McElhenny's Appeal, 46 Pa. 347 (1863), a guardian is a trustee for custody and management, and not like an executor or administrator for mere collection and distribution; hence the percentage on sums collected and allowable to the one as compensation for service is not always a just measure of the compensation that should be allowed to the other.

Fiduciaries cannot be expected to accept the labor and responsibility involved in a small estate where the usual rate of compensation would entail actual loss to the fiduciary. It is certainly to the advantage of a minor to have the benefit of a skillful, competent and responsible guardian such as the present accountant, and upon attaining full age the late minor must expect to be charged with fair and reasonable compensation of the guardian.

In the instant case, without indicating express approval of the method adopted by the accountant in basing its compensation upon a fixed rate of five percent on cash received during the course of administration and two percent on the unrealized portion of the asset, the court holds that the total compensation claimed by the accountant, to wit, $253.83, is not only fair and reasonable but also very moderate in view of the valuable services performed.

Accordingly, the exception is hereby dismissed, the credit for accountant's commissions claimed in the account is hereby approved and the accountant is hereby allowed full credit therefor.