## Stong's Estate.    Stong's Appeal.

*Executors—Trust and trustees—Investments—Surcharge—Will.*

Where a testator directs that his executor shall invest his estate in " good real estate security," and the executors fail to reduce certain personal bonds to judgment until after the obligor has become insolvent, one executor cannot relieve himself from liability for the loss, on the ground that his coexecutor had the custody of the bonds, collected the interest on them, and had the entire charge of the business.

Argued Jan. 31, 1894.    Appeal, No. 135, Jan. T., 1894, by George W. Stong, executor, from decree of O. C. Montgomery Co., sustaining exception to auditor's report, distributing estate of Phillip Stong, deceased.    Before GREEN, WILLIAMS, McCOLLUM, DEAN and FELL, JJ.    Affirmed.

Exceptions to adjudication of executor's account.

, The facts appear by the following opinion of the court below, by SWARTZ, P. J.:

" The controversy is raised by the following exception to the auditor's report: ' The learned auditor erred in not surcharging the accountant with the sum of $733, being the credit claimed by the accountant as the amount not collected on the Wilson bonds.'

" The facts material to the issue are not in dispute.    They may be stated as follows:

" Phillip Stong died, testate, Oct. 3, 1887.    His widow died

on Sept. 18, 1888. The testator gave to his wife his entire estate for life with the privilege of using so much thereof as may be necessary for the comfortable maintenance of herself and his niece, Alice Dotts.

"Upon the death of the wife the will makes the following disposition : 'I order and direct that upon the death of my said wife my said executors shall set apart out of the balance or residue of my estate the sum of twelve thousand dollars and safely invest the same upon good real estate security, and pay over the interest accruing thereupon semi-annually to my said niece, Alice Dotts, daughter of my sister Susan, during the full term of her life.'

"Among the assets of the estate were two bonds, one with confession of judgment for $600 given by Thomas Wilson on Nov. 1, 1883, payable in one year; the other without such confession, made by the said Thomas Wilson for $355, dated April 6, 1882, also payable in one year.

"Algernon S. Jenkins, the executor, was a man of business experience, and he had the possession and the custody of the Wilson bonds. Interest was paid on the six hundred dollar bond to Nov. 1, 1888, and on the other bond to April 6, 1889. The last interest was paid to Mr. Jenkins on April 10, 1889.

"Mr. Jenkins died July 9, 1890. The surviving executor made demand for the Wilson papers after the death of Mr. Jenkins, but they were not delivered to him at that time. As soon as he received them he handed them over to his counsel, Mr. Rogers. The bond with the confession of judgment was entered of record March 10, 1891, and on April 29, 1891, Thomas Wilson confessed judgment on the other claim by giving a bill single, which was entered the same day.

"At the testator's death Thomas Wilson was the owner of a farm in Horsham township containing sixty-one acres. He also owned a house and lot in Hatfield township. There was a mortgage of $2,000 on the farm and one of $1,600 on the house and lot. There was also a judgment of $600 entered April 6, 1887. These properties were appraised at $9,500 in 1891 and were fully as valuable in 1887 as in 1891.

"The situation as to liens against the Wilson properties remained unchanged at the time of the widow's death, in September, 1888, but on April 1, 1889, a judgment for $1,300 was

entered; April 1, 1890, one for $200; May 28, 1890, one for $200; Sept. 15, 1890, one for $350. Mr. Wilson made an assignment for the benefit of creditors on May 1, 1891.

" The sale of the real estate by the assignee realized a sufficient fund to pay all the judgments prior in time to the Stong liens, and paid on the Stong judgment of $600 $181.48. The judgment of $200 entered May 28, 1890, did not participate in the distribution. Mr. Wilson's real estate was released from this claim, so the auditor finds.

" The accountant purchased the farm at $1,500 over and above the mortgage incumbrance, making the purchase money $3,500 and the overdue interest on the mortgage of $2,000 at the time of the sale. He now holds the farm for sale and will take $6,000 for it. He spent in permanent improvements over $100.

" The accountant says, ' Jenkins had all to do with the papers. I had nothing at all to do with the papers until after Mr. Jenkins died. . . . I don't know whether they were judgments or not. . . . Before his death Jenkins attended to it himself. I gave the Wilson matter no attention.'

" From the recital of these facts it is apparent that the entry of the bond for $600 prior to April 1, 1889, and the reduction to judgment of the bond for $355 prior to said date, would have saved both bonds to the testator's estate. Again, if the bond for $600 had been entered of record prior to April 1, 1890, it would have been paid in full.

" After the death of the widow in September, 1888, it became the duty of the executors ' to set apart $12,000 and safely invest the same upon good real estate security.' The auditor finds that the whole principal estate did not exceed $12,000. Why was this plain direction of the testator disregarded?

" The accountant answers that he is excusable because the coexecutor had the custody of the papers and collected the interest; but this will not do, for by the will a joint duty is cast upon the executors which they agreed to perform when they accepted the appointment. That a direction to invest in good real estate security for the life of Alice Dotts imposed a joint duty cannot be denied, and under our authorities one executor could not relieve himself from all responsibility in the matter by intrusting the whole duty to his coexecutor. In Weigand's

Appeal, 28 Pa. 471, the testator directed his executors to secure $500 and pay the interest yearly to his daughter for life. One of the executors, a son, owed the father $500 on a bond. The coexecutor made no effort to collect the bond and secure the fund. The money was lost through the insolvency of the executor so indebted to the estate, and the coexecutor was held liable to the legatee for the loss. Weldy's Appeal, 102 Pa. 454, is to the same effect. In such cases the nonacting executor is not liable for the default of his coexecutor, but he is responsible for his own negligence, because the loss resulted from joint negligence where a joint duty was imposed. So in Fesmire's Estate, 134 Pa. 86, where the testator directed an investment 'in good real estate security,' there was a joint duty imposed to secure such investment. The court say: 'When they put it in Kerper's power to collect the money on the mortgage, it became their duty to see that it was again invested in "good real estate security," and if they had not neglected this duty the loss would not have been sustained. They did neglect it. The embezzlement was made possible because they neglected it, and their liability grows out of their negligence.'

" Ordinarily an executor is liable for his own acts and omissions and not for those of his associates. And it may well be, as the auditor intimates, that the accountant is not liable for the negligence of his coexecutor, Mr. Jenkins, but, as already shown, this is not the test of liability in the case before us. The inquiry is, was the accountant himself negligent? The auditor finds no evidence of negligence. We cannot agree with him.

" ' As a general rule, the measure of care and diligence required of a trustee is such as would be pursued by a man of ordinary prudence and skill in the management of his own estate: Fahnestock's Appeal, 104 Pa. 46. It is equally well settled, however, that a trustee who invests the funds belonging to a trust on personal security does so at his own risk. This is so well settled that a citation of authorities is unnecessary : ' Law's Estate, 144 Pa. 499.

" If it were not for the explicit directions in the will there might be some excuse for continuing the investment as made by the testator. The direction to invest safely in good real estate security leaves the accountant without any excuse for

his omission. But suppose there was no immediate necessity to change these personal securities into investments designated by the will, does the delay, under the facts and circumstances, indicate ordinary prudence and skill?

" The accountant confesses his entire ignorance of the matter. He did not even know whether the bonds were judgment bonds. 'I did not give the Wilson matter any attention.' The interest on the $600 bond was due March 1, 1889; it remained unpaid. All other persons holding judgments against Mr. Wilson entered them of record. These executors, alone, did nothing to protect their claims, although the failure to pay interest should have stirred them to action. There was no difficulty in their way, at least not so far as the $600 bond was concerned. All that was necessary to secure the debt was to carry the bond to the office for record. If this had been done at any time between the death of the testator, in 1887, and April 1, 1890, the money would not have been lost.

" The Wilson failure was not the result of some sudden misfortune. His financial standing grew weaker and weaker, as indicated by the successive entries of judgments against him. There was thus ample notice of danger to creditors. If the executors had exercised the care and prudence of others similarly situated the loss could not have occurred: Long's Estate, 6 Watts, 46.

" It may be said that suit was necessary to protect the bond of $355. This may or may not be so. If the debtor was willing to give a judgment for $600 it is likely he would have given one for the smaller bond. If he accommodated others as early as 1887, why should he refuse the executor of the testator as late as 1890? All we know as to this matter is, that no effort whatever was made to comply with the explicit direction of the testator. An unsuccessful effort would excuse. Without effort the accountant is without excuse. It is clear that if the diligence exercised after the death of Mr. Jenkins had been applied before that time, the loss would not have occurred.

" We conclude that the accountant was negligent in his disregard of the duties imposed under the will, and he was negligent in his failure to take the usual and ordinary steps to protect or collect the assets of the estate of the testator."

Exception sustained.  The executor appealed.

*Error assigned* was sustaining exception.

*George W. Rogers*, for appellant, cited: Calhoun's Est., 6 Watts, 185; Crist v. Brindle, 2 Rawle, 121; Keller's Ap., 8 Pa. 288; Eyster's Ap., 16 Pa. 372; Neff's Ap., 57 Pa. 91; Witner's Ap., 87 Pa. 123; Stewart's Ap., 110 Pa. 425; Hanbest's Ap., 92 Pa. 483; Hall v. Boyd, 6 Pa. 270; Young's Ap., 99 Pa. 75; Lightcap's Ap., 95 Pa. 455; Fesmire's Ap., 134 Pa. 85.

*N. H. Larzelere, M. M. Gibson* with him, for appellees, cited: Long's Est., 6 Watts, 46; Vandever's Ap., 8 W. & S. 405; Johnson's Est., 9 W. & S. 107; Beckley's Est., 3 Pa. 427; Ducommun's Ap., 17 Pa. 268; Fahnestock's Ap., 104 Pa. 46; Weigand's Ap., 28 Pa. 471; Weldy's Ap., 102 Pa. 454; Fesmire's Ap., 134 Pa. 86.

PER CURIAM, February 12, 1894:

The decree in this case is affirmed on the opinion of the learned court below.

Judgment affirmed.