## GRIGG *v.* HANNA.

1. APPEAL AND ERROR—EQUITY—FINDINGS OF COURT—EVIDENCE.

   In suit by administratrix *de bonis non* with will annexed of estate of her deceased husband against administratrix of estate of deceased husband's partner, former executor of deceased husband's will and transferee of certain assets claimed by plaintiff and others, to set aside probate proceedings, for discovery, accounting and to impress a constructive trust, findings of fact by trial court *held,* sustained by the testimony.

2. JUDGMENT—COLLATERAL ATTACK.

   Suit to set aside proceedings in probate court is a direct, not a collateral, attack upon such probate proceedings.

3. COURTS—PROBATE JURISDICTION—ESTATES OF DECEDENTS.

   The probate court has exclusive jurisdiction of the administration and settlement of estates of deceased persons except where its remedies are inadequate or interposition of equity is necessary for some auxiliary purpose.

4. EXECUTORS AND ADMINISTRATORS—ACCOUNTS—PROBATE COURT ORDERS—RES JUDICATA.

An order of the probate court allowing the account of an executor or administrator is an adjudication to which the general principles of *res judicata* apply.

5. SAME—ALLOWANCE OF ACCOUNTS—ADJUDICATION.

A probate court order allowing the account of an executor or administrator does not adjudicate what is not before the court nor adjudicate what is not contained in it.

6. JUDGMENT—PROBATE COURT ORDERS—FRAUD.

Orders of the probate court may be attacked for fraud.

7. SAME—EQUITY—FRAUD.

Fraud which warrants equity in interfering with a judgment must be fraud in obtaining the judgment and must be positive and not merely constructive.

8. FRAUD—TRUSTS—EVIDENCE.

As against the living, proof of fraud must be clear and convincing but when charges of corrupt, fraudulent or criminal conduct are made against the dead who have occupied positions of trust, and whose acts have been authorized and confirmed by a court of competent jurisdiction, the proof must be so clear and convincing as to satisfy every reasonable mind.

9. TRIAL—PREPONDERANCE OF EVIDENCE.

In noncriminal cases the court cannot require a jury to disregard any preponderance of evidence which convinces them.

10. FRAUD—EVIDENCE.

Where the evidence of fraud is in writing, signed by the party to be charged, such writing, like any other testimonial document, may, in effect, be conclusive upon the party.

11. PARTNERSHIP—DEATH—WINDING UP—FIDUCIARIES.

Since copartners in business are co-owners of it and the partnership is dissolved by death of one of the partners, the surviving partner cannot continue the business but must wind it up and in so doing is liable as a fiduciary (2 Comp. Laws 1929, §§ 9846, 9861, 9871, 9877).

12. EXECUTORS AND ADMINISTRATORS—PARTNERSHIP.

The administrator of the estate of a deceased partner has nothing to do with his interest therein except to look after it so far as to see that no waste or fraud is committed in its manage-

ment, until the surviving partner has settled up the partnership, paid its debts and turned over to the administrator his share of what is left.

13. PARTNERSHIP—SURVIVOR AS TRUSTEE—CESTUI'S CONSENT TO PURCHASE ASSETS.

The surviving partner, as a fiduciary, is in effect the trustee of the assets of the deceased partner and as such trustee may not be interested directly or indirectly as a purchaser in his own behalf of the trust property without the consent of the *cestui que trust* (2 Comp. Laws 1929, §§ 9861, 9877).

14. TRUSTS—TRUSTEE WITH CONFLICTING INTEREST.

Trustee has no right to act when duty is opposed to interest, fidelity to cupidity, or honesty to desire for personal gain.

15. SAME—DUTY OF TRUSTEE.

To act as trustee for dead men carries with it the duty to exercise honesty, good faith, and active diligence; the duty to disclose to the beneficiaries and account for the estate.

16. PARTNERSHIP—JOINT ADVENTURES—SECRET ADVANTAGES.

One joint adventurer or copartner may not seek to reap a profit at the expense of the other, the relationship forbidding and negativing the existence of any secret advantage possessed by one over the other.

17. TRUSTS—EQUITY—JURISDICTION.

Equity will take jurisdiction where one occupying a fiduciary relationship violates his trust to the prejudice of persons otherwise beneficially interested.

18. PARTNERSHIP—ACCOUNTING BY SURVIVOR.

The use of property wrongfully appropriated by one copartner must be regarded as a continued use of the partnership assets never accounted for, and in a proper case the surviving copartner may properly be decreed to make it good.

19. EVIDENCE—FAILURE TO PRODUCE TESTIMONY.

Failure to produce testimony which is in control of the particular party justifies the presumption that the testimony, if produced, would be detrimental.

20. SAME—FIDUCIARY'S DISCLOSURE—FRAUD.

Failure of a fiduciary to disclose fully and fairly all facts to those to whom such duty of disclosure is owed may be regarded as evidence of fraud.

21. TRUSTS—CONSTRUCTIVE TRUST—FRAUD—STATUTE OF FRAUDS.

Party who obtains a conveyance under circumstances which court considers fraudulent or oppressive by instant or immediate consequence will be converted into a trustee in case that construction is needful for the purpose of administering adequate relief and statute of frauds will not hinder equity from affording relief in such manner (3 Comp. Laws 1929, §§ 13411, 13412).

22. EQUITY—JURISDICTION—FIDUCIARIES.

Equity takes cognizance of case where one holding confidential and fiduciary relations to another, and thereby morally and legally bound to communicate the facts, conceals them for his own benefit and profit and to the disadvantage of the other.

23. FRAUD—SUPPRESSION OF TRUTH—INTENT.

A fraud arising from the suppression of the truth is as prejudicial as that which springs from the assertion of a falsehood and courts will not hesitate to sustain recovery where the truth has been suppressed with intent to defraud.

24. TRUSTS—EQUITY—ADEQUACY OF REMEDY.

Courts of equity do not enforce or impose penalties or punish parties for their wrongs in the administration of trusts but only furnish the adequate means of redress when the law fails to do so.

25. EQUITY—NATURE OF RELIEF AFFORDED.

A court of equity may adapt its relief to the exigencies of the case and when nothing more is required, may order a sum of money paid to plaintiff or give him a personal judgment therefor, to be enforced by execution.

26. PARTNERSHIP—ACCOUNTING BY SURVIVING PARTNER.

Estate of surviving partner who sought to absorb all of the partnership assets by suppressing material facts which it was his duty to disclose *held*, accountable to administratrix of estate of partner first deceased.

27. EXECUTORS AND ADMINISTRATORS—NEGLIGENCE—RES JUDICATA—PARTNERSHIP—ACCOUNTING BY SURVIVING PARTNER.

In suit by administratrix *de bonis non* with will annexed of deceased partner's estate against trust company which had been executor of his will and surviving partner to set aside probate court orders allowing accounts and discharging executor and for discovery and accounting, record *held*, to sustain finding

of trial court that evidence was insufficient to establish liability on part of trust company for negligent administration of the estate, such probate court orders being *res judicata* of issues now sought to be readjudicated so far as executor is concerned although not as to surviving partner.

POTTER and CHANDLER, JJ., dissenting in part.

Appeal from Wayne; Miller (Guy A.), J. Submitted April 8, 1937. (Docket No. 20, Calendar No. 39,294.) Decided February 25, 1938.

Bill by Violet R. Grigg, administratrix *de bonis non* with will annexed of estate of W. Herbert Grigg, deceased, against Anna Hanna, administratrix of the estate of Bert Hanna, deceased, and others for an accounting and other relief. Bill dismissed as to Richard Charles Hanna, Frances Esther Haar, Detroit Trust Company and Grigg-Hanna Lumber & Box Company, Michigan corporations. Decree ordering accounting as to defendant administratrix. Defendant administratrix appeals. Plaintiff cross-appeals as to defendants Detroit Trust Company and Grigg-Hanna Lumber & Box Company. Affirmed.

*William S. Peterson* (*Kenneth M. Stevens,* of counsel), for plaintiff.

*Lawhead & Kenney* (*Donald P. Kipp,* of counsel), for defendants administratrix and Grigg-Hanna Lumber & Box Company.

*Miller, Canfield, Paddock & Stone,* for defendant Detroit Trust Company.

POTTER, J. (*dissenting in part*). Plaintiff, as administratrix *de bonis non* with the will annexed of

the estate of W. Herbert Grigg, deceased, filed a bill in equity against Anna Hanna, administratrix of the estate of Bert Hanna, deceased; the Detroit Trust Company, which had been appointed executor of the will of W. Herbert Grigg after his death; Richard Charles Hanna; Frances Esther Haar; and the Grigg-Hanna Box & Lumber Company, a corporation.

The bill of complaint charged that W. Herbert Grigg and Bert Hanna formed a partnership, known as the Grigg-Hanna Company, May 25, 1905, for a period of 10 years; the partnership affairs were not wound up at the expiration of the contract period, but continued until the death of W. Herbert Grigg; W. Herbert Grigg entered into a partnership with Charles W. Leech and Bert Hanna, in the Charles W. Leech Lumber Company, February 1, 1908, which partnership was to expire January 31, 1913, but this partnership continued until February 26, 1931, when a new partner was admitted to the partnership and new articles of association executed by the parties thereto; June 26, 1920, W. Herbert Grigg and wife bought the Tireman avenue property of Bert Hanna and wife for $125,000, with $12,000 paid down and the balance to be paid monthly; June 26, 1920, W. Herbert Grigg borrowed from Bert Hanna a considerable sum of money and gave him a quitclaim deed of the Michigan avenue property, taking back a land contract to purchase it for $100,000, $13,000 of which was paid down; April 19, 1931, W. Herbert Grigg died, his will was admitted to probate, and April 29, 1931, the Detroit Trust Company was appointed executor of his will, and acted as such until October 3, 1933; July 8, 1932, the Detroit Trust Company filed a petition in the probate court to sell the Michigan avenue property and the

Tireman avenue property, alleging the fee of the Michigan avenue property was worth $50,000, but, being subject to the contract of purchase above mentioned, the Grigg estate's interest therein was nothing; that the fee to the Tireman avenue property was worth $49,000, but, being subject to the land contract of purchase, the interest of the estate of W. Herbert Grigg therein was nothing, and that both properties were sold to Bert Hanna for a nominal consideration of $1 and deeded to him; September 2, 1932, the Detroit Trust Company, as executor, petitioned the probate court for an order authorizing it to sell the interest of the Grigg estate in the Grigg-Hanna Company, the one-half interest in the Grigg-Hanna Box Company, and the one-fourth interest of such estate in the Charles W. Leech Lumber Company, for $15,000, to Bert Hanna who agreed, in consideration of such sale, to release his claim against the Grigg estate which had been allowed by the commissioners in the probate court, and this was done. The bill of complaint charges that though the Detroit Trust Company had on hand appraisals and statements made by Bert Hanna showing the Michigan avenue property was worth $150,000 and the Tireman avenue property was worth $125,000, it did not disclose that fact to the probate court, but permitted false and fraudulent affidavits of freeholders to be presented to the probate court showing the values of $50,000 and $49,000 respectively above referred to; that Bert Hanna presented and had allowed against the estate of W. Herbert Grigg a fictitious claim of $200,000 which it knew was false, and was guilty of gross neglect of duty and constructive fraud in not opposing it and disclosing the facts within its knowledge to the commissioners on claims, and that Bert Hanna was

guilty of active fraud in presenting and procuring the allowance of such fictitious claim while occupying a fiduciary relation to the Grigg estate as surviving partner of W. Herbert Grigg; and that, in addition, the Detroit Trust Company was guilty of gross neglect of duty in not compelling Bert Hanna to account for the withdrawals of money from the Grigg-Hanna partnership after the death of W. Herbert Grigg and before the death of Bert Hanna who died March 20, 1934.

April 11, 1934, Anna Hanna was appointed administratrix of the estate of Bert Hanna, deceased, and April 16, 1935, the bill of complaint herein was filed to set aside the proceedings in the probate court for discovery, accounting, injunction, and to impress a constructive trust on the property of the Grigg-Hanna Box & Lumber Company, and for other relief.

Defendant Detroit Trust Company, by way of answer, denied all the charges of gross negligence and fraud, either actual or constructive, against it; alleged the regularity of the probate proceedings in the W. Herbert Grigg estate, that the proceedings in the probate court were regular and constituted former adjudication; that in the proceedings to remove the Detroit Trust Company and in passing upon its final account, the probate court passed upon and adjudicated the question of the propriety of the sales made by it and its conduct in relation thereto; and that all proceedings for the sale of the partnership interest in the Grigg estate property sold, and all proceedings in relation to the final account of the Detroit Trust Company, executor, were finally adjudicated against plaintiff and in favor of the Detroit Trust Company by the probate court of Wayne county, and may not be collaterally attacked.

In addition, it set up various special defenses tending to show the regularity of its conduct, again insisting the decisive questions were *res judicata.*

Anna Hanna, administratrix of the estate of Bert Hanna, deceased, and the Grigg-Hanna Lumber & Box Company (above mentioned as Grigg-Hanna Box & Lumber Company), a corporation, filed a joint and several answer denying the substantive charges of plaintiff on which she claimed relief, and asserting the probate proceedings were *res judicata.*

Plaintiff, by way of answer to the affirmative matter set up in defendants' answers, says if the accounting allowed in the probate court, obtained by fraud, is permitted to stand, the Grigg estate would be insolvent, but avers the figures in defendants' answers were fraudulent representations to the probate court and avers the Grigg estate was not insolvent; alleges it was solvent in fact and, but for the fraudulent accounting of defendants, would be shown to be so; and denies the probate proceedings are *res judicata.*

The trial court, after hearing the testimony, filed exhaustive findings of fact sustaining for the most part the claims made by plaintiff, but dismissing the bill as to Richard Charles Hanna and Frances Esther Haar, with costs against plaintiff; dismissing the bill of complaint against the Detroit Trust Company with prejudice to the right of plaintiff ever again to bring suit in law or in equity concerning any of the matters and things set forth in plaintiff's bill of complaint, but without costs; ordering an accounting and fixing the basis thereof; denying personal relief against the Grigg-Hanna Lumber & Box Company, but without prejudice to whatever legal lien may exist in favor of William Herbert Grigg, one of the partners of the Grigg-Hanna Com-

pany, a partnership, upon any partnership property which since the death of William Herbert Grigg had been taken over by the corporation; and referring the cause to a circuit court commissioner for the determination of the value of the estate's interest in the Charles W. Leech Lumber Company as of April 4, 1932, the total amount of cash withdrawals by Bert Hanna between April 19, 1931, and April 4, 1932, from both partnerships, the balance due and actually owing by Mr. Grigg to Bert Hanna upon the land contract covering the Michigan avenue property, the true amount of any other sums Bert Hanna actually paid under the terms of the settlement with the Detroit Trust Company and which amounted to legal claims against the Grigg estate, all of which information was to be reported back to the trial court, together with a full and complete list of all the property, both real and personal, transferred by Bert Hanna from the Grigg-Hanna Company, a partnership, to the Grigg-Hanna Lumber & Box Company and still in the latter's possession, and a full and complete list of all property, real and personal, that was withdrawn or received from the Charles W. Leech Lumber Company, a partnership, and now in possession of the defendants Anna Hanna, administratrix, or Grigg-Hanna Lumber & Box Company, a corporation. Plaintiff was given costs.

By this decree, basis of the accounting was established as follows: (a) that the claim of Bert Hanna upon the Tireman avenue land contract be and the same is decreed to have been discharged by the cancellation of the land contract thereon, and the claim allowed by the commissioners thereon satisfied and discharged; (b) the value of the W. Herbert Grigg estate's interest in the Grigg-Hanna Company is found to be and fixed at the sum of $125,000 and the estate of Bert Hanna charged therewith; (c) the

estate of Bert Hanna, deceased, should be given credit in such accounting for $15,000 which Bert Hanna paid upon the settlement. The bill of complaint was dismissed against the Grigg-Hanna Lumber & Box Company, a corporation, without costs, no personal relief being decreed against it, without prejudice to whatever legal lien might exist in favor of William Herbert Grigg, one of the partners of the Grigg-Hanna Company, as above mentioned.

From this decree, defendant Anna Hanna, administratrix of the estate of Bert Hanna, deceased, appeals. Plaintiff takes a cross-appeal from the decree of the court dismissing its bill of complaint as against the Detroit Trust Company and the Grigg-Hanna Lumber & Box Company.

Anna Hanna, administratrix, as appellant, contends the findings of the probate court of Wayne county and the claims allowed by the commissioners on claims; the petitions for licenses to sell real estate and personal property of the Grigg estate, and the orders of the probate court confirming those sales; the petition filed by the plaintiff to remove the Detroit Trust Company as executor of the estate of William Herbert Grigg, and the order made in pursuance thereof; and the final account of the Detroit Trust Company, as executor of the estate of William Herbert Grigg as allowed by the probate court, are *res judicata* as to the matters involved in this litigation and a bar to the plaintiff's right to to recover against Anna Hanna, administratrix of the estate of Bert Hanna, deceased; that Bert Hanna was not guilty of fraud in his dealings with the executor and heirs of the Grigg estate and no collateral inquiry into the proceedings of the probate court is permissible; that Bert Hanna, as surviving partner of himself and William Herbert Grigg, did not breach any duty he owed to the estate of William

Herbert Grigg, his deceased partner; that plaintiff did not show any damages, by the evidence introduced, suffered by reason of any of the conduct of Bert Hanna; the court was in error in ordering an accounting based upon a finding the value of the interest of the estate of William Herbert Grigg in the Grigg-Hanna Company was $125,000, that in reality Bert Hanna acquired the assets of the Grigg-Hanna Company and the Charles W. Leech Lumber Company at no cost to himself, the estate of Bert Hanna should be charged with one-half of the withdrawals from the two partnerships in question in the year following the death of William Herbert Grigg, and in finding the Tireman avenue land contract should not be considered in any accounting made.

Defendant and cross-appellee, the Detroit Trust Company, contends that, assuming the questions involved are not *res judicata,* the Detroit Trust Company was not guilty of culpable negligence in the respects charged in the bill of complaint during its administration as executor of the estate of William Herbert Grigg which caused loss or damage to that estate, and it was not guilty of fraud in the respects charged in the bill of complaint during its administration as executor of the estate of William Herbert Grigg which caused loss or damage to his estate; and the orders of the probate court of the county of Wayne during the administration of Grigg's estate are *res judicata* of the questions involved.

Plaintiff, in reply to the brief of Anna Hanna, administratrix, defendant and appellant, accepts the statements of the questions involved submitted by defendant and appellant Anna Hanna.

· Plaintiff, in her cross-appeal against the Grigg-Hanna Lumber & Box Company and Detroit Trust

Company, contends she is entitled to a first lien for all sums found to be due, after the payment of partnership creditors, upon all real estate and personal property of the partnership involved that was transferred to the defendant Grigg-Hanna Lumber & Box Company, a corporation, and still held by it.

The Grigg-Hanna Lumber & Box Company contends the decree of the trial court against Anna Hanna, administratrix of the estate of Bert Hanna, deceased, does not entitle plaintiff to a first lien upon the assets which formerly belonged to the Grigg-Hanna Company, a partnership, which were purchased by Bert Hanna from the executor of the estate of William Herbert Grigg and subsequently transferred by Bert Hanna to the Grigg-Hanna Lumber & Box Company, a Michigan corporation.

An examination of the record is convincing the findings of fact of the trial court are sustained by the testimony.

This proceeding is not a collateral attack upon the proceedings of the probate court. It is a direct attack upon such probate proceedings. Van Fleet's Collateral Attack, § 2. The probate court has exclusive jurisdiction of the administration and settlement of the estates of deceased persons, except where its remedies are inadequate or the interposition of equity is necessary for some auxiliary purpose. *Nolan* v. *Garrison,* 156 Mich. 397; *Davis* v. *McCamman,* 165 Mich. 287; *Graham* v. *Graham,* 171 Mich. 307; *Brooks* v. *Hargrave,* 179 Mich. 136; *In re Rahn's Estate,* 241 Mich. 29; *Burgess* v. *Jackson Circuit Judge,* 249 Mich. 558.

An order of the probate court allowing the account of an executor or administrator is an adjudication. *In re Rahn's Estate, supra.* The general principles of *res judicata* apply to the orders of the

probate court on final accounts of executors and administrators. *Heap* v. *Heap,* 258 Mich. 250; *Mc-Dannel* v. *Black,* 270 Mich. 305. An order of a probate court allowing an account of an executor or administrator does not adjudicate what is not before the court. *Murphy Chair Co.* v. *American Radiator Co.,* 172 Mich. 14; *Creck* v. *Laski,* 248 Mich. 425 (65 A. L. R. 1113). Its allowance does not adjudicate what is not contained in it. *Morton* v. *Johnston,* 124 Mich. 561; *Porter* v. *Long,* 124 Mich. 584; *In re Ward's Estate,* 152 Mich. 218; *Powell* v. *Pennock,* 181 Mich. 588; *MacKenzie* v. *Union Guardian Trust Co.,* 262 Mich. 563.

The doctrine of former adjudication, its limitations and extent, is exhaustively discussed in *Bond* v. *Markstrum,* 102 Mich. 11; *MacKenzie* v. *Union Guardian Trust Co., supra; Rogers* v. *Detroit Automobile Inter-Insurance Exchange,* 275 Mich. 374.

The orders of the probate court may be attacked for fraud. 2 Pomeroy's Equity Jurisprudence (3d Ed.), § 919; 34 C. J. pp. 470, 471; *Adair* v. *Cummin,* 48 Mich. 375; *Ewing* v. *Lamphere,* 147 Mich. 659; *Babcock* v. *Babcock,* 150 Mich. 558; *In re Rahn's Estate, supra.* The fraud which warrants equity in interfering with a judgment must be fraud in obtaining the judgment. 2 Pomeroy's Equitable Remedies (2d Ed.), § 2077; *Columbia Casualty Co.* v. *Klettke,* 259 Mich. 564. The fraud must be positive and not merely constructive. 34 C. J. p. 471; *Ombrello* v. *Railway Co.,* 252 Mich. 396.

"As against the living, proof of fraud must be clear and convincing. But when charges of corrupt, fraudulent, and criminal conduct are made against the dead, who have occupied positions of trust, and whose acts have been authorized and confirmed by a court of competent jurisdiction, *the proof must be*

*so clear and convincing as to satisfy every reason-*
*able mind." Egan* v. *Grece,* 79 Mich. 629, 639.

Though, as said in *Peoples* v. *Evening News Ass'n,*
51 Mich. 11:

"There are but two classes of cases recognized
as requiring different rules of proof; *first,* criminal
cases, and *second,* civil cases, or, to speak more ac-
curately, cases not criminal. * * * In cases not crim-
inal, and involving no criminal judgment and punish-
ment, the court cannot require the jury to disregard
any preponderance of evidence which convinces
them."

Where the evidence of fraud is in writing, signed
by the party to be charged, such writing, like any
other testimonial document, may, in effect, be con-
clusive upon the party.

Copartners in business are co-owners of the busi-
ness. 2 Comp. Laws 1929, § 9846. The partnership
is dissolved by the death of one of the partners.
2 Comp. Laws 1929, § 9871. The surviving partner
under no disability must wind up the partnership.
2 Comp. Laws 1929, § 9877. In winding up the
affairs of the partnership, the surviving partner is
liable as a fiduciary. 2 Comp. Laws 1929, § 9861.
He has no right to continue the business, *Swaine* v.
*Hemphill,* 165 Mich. 561 (40 L. R. A. [N. S.] 201);
*Marshall Field & Co.* v. *Himelstein,* 253 Mich. 355,
it being the duty of the surviving partner to wind
up the affairs of the copartnership.

The administrator of the estate of a deceased
partner has nothing to do with his interest therein,
except to look after it so far as to see that no waste
or fraud is committed in its management, until the
surviving partner has settled up the partnership,
paid its debts and turned over to the administrator

his share of what is left. It is not until then the administrator is entitled to the possession of the estate's interest therein. *Loomis* v. *Armstrong,* 63 Mich. 355. The surviving partner, as a fiduciary, is in effect the trustee of the assets of the deceased partner. *MacKenzie* v. *Union Guardian Trust Co., supra.* As such trustee, he may not be interested directly or indirectly as a purchaser in his own behalf of the trust property without the consent of the *cestui que trust.* 1 Perry on Trusts & Trustees (6th Ed.), § 195.

"A trustee has no right to act when duty is opposed to interest, fidelity to cupidity, honesty to the desire for personal gain. To act as trustee for dead men carries with it the duty to exercise honesty, good faith, and active diligence; the duty to disclose to the beneficiaries and account for the estate, and, stringent as the law is in prohibiting trustees acting in violation of their trust, the rules of law should be more strict rather than be relaxed." *Kelsey* v. *Detroit Trust Co.,* 265 Mich. 358.

"There is little difference between the joint adventure and the partnership in this respect. One adventurer may not seek to reap a profit at the expense of the other. The very relationship forbids and negatives the existence of any secret advantage possessed by one over the other." *Latimer* v. *Piper,* 261 Mich. 123, 134.

*Kelsey* v. *Detroit Trust Co., supra,* above quoted, was approved in *Re Culhane's Estate,* 269 Mich. 68; and *McDannel* v. *Black, supra,* cited with approval in *MacKenzie* v. *Union Guardian Trust Co., supra.*

Equity will take jurisdiction where one occupying a fiduciary relationship violates his trust to the prejudice of persons otherwise beneficially interested. *Tompkins* v. *Hollister,* 60 Mich. 470; *Perrin* v. *Lepper,* 72 Mich. 454; *Graham* v. *Graham, supra.*

The use of property wrongfully appropriated by one copartner must be regarded as a continued use of the partnership assets never accounted for, and in a proper case the surviving copartner may properly be decreed to make it good. *Heath* v. *Waters,* 40 Mich. 457.

The failure to produce testimony which is in control of the particular party justifies the presumption that the testimony, if produced, would be detrimental. 1 Jones on Evidence (Horwitz Ed.), § 18; 1 Wigmore on Evidence (2d Ed.), § 291. The failure on the part of one occupying a fiduciary relation to disclose fully and fairly all of the facts to those to whom such duty of disclosure is owed may be regarded as evidence of fraud. *Heath* v. *Waters, supra.*

"It is the settled doctrine of the court that where a conveyance is obtained for ends which it regards as fraudulent or under circumstances it considers as fraudulent or oppressive by instant or immediate consequence, the party deriving title under it will be converted into a trustee, in case that construction is needful for the purpose of administering adequate relief; and the setting up the statute of frauds by the party guilty of the fraud or misconduct in order to bar the court from effective interference with his wrong-doing, will not hinder it from forcing on his conscience this character as a means to baffle his injustice or its effects. 2 Comp. Laws 1871, §§ 4692, 4693;* 1 Story Equity Jurisprudence, §§ 330, 333; 2 Story Equity Jurisprudence, §§ 1254, 1265; 1 Spence's Equitable Jurisdiction, 511; 2 Spence's Equitable Jurisdiction, 194, 294 *et seq.;* Hill on Trustees, 144; *Mestaer* v. *Gillespie,* 11 Ves. Jr. 621 (32 Eng. Rep. 1230); *Pickett* v. *Loggon,* 14 Ves. Jr. 215, 234 (33 Eng. Rep. 503); *Barnesly* v. *Powel,* 1 Ves.

* Same as 3 Comp. Laws 1929, §§ 13411, 13412.—REPORTER.

Sr. 284, 289 (27 Eng. Rep. 1034); *Young* v. *Peachy,*
2 Atk. 254, 257 (26 Eng. Rep. 557); *Brown* v. *Lynch,*
1 Paige Ch. (N. Y.) 147; *Hutchins* v. *Lee,* 1 Atk. 447
(26 Eng. Rep. 284); *Wolford* v. *Herrington,* 74 Pa.
311 (15 Am. Rep. 548); *Gregory* v. *Williams,* 3
Meriv. 582 (36 Eng. Rep. 224)." *Huxley* v. *Rice,* 40
Mich. 73.

Especially does equity take cognizance of a case
where one holding confidential and fiduciary rela-
tions to another, and thereby morally and legally
bound to communicate the facts, conceals them for
his own benefit and profit and to the disadvantage
of the other. *Tompkins* v. *Hollister, supra.* A
fraud arising from the suppression of the truth is
as prejudicial as that which springs from the asser-
tion of a falsehood and courts have not hesitated to
sustain recoveries where the truth has been sup-
pressed with the intent to defraud. *Tompkins* v.
*Hollister, supra.*

See, also, *Darrah* v. *Boyce,* 62 Mich. 480; *Harper*
v. *Corcoran,* 166 Mich. 474; *Graham* v. *Graham,*
*supra.*

Courts of equity do not enforce or impose pen-
alties or punish parties for their wrongs in the ad-
ministration of trusts, but only furnish the adequate
means of redress when the law fails to do so. *Perrin*
v. *Lepper,* 72 Mich. 454.

"A court of equity may adapt its relief to the
exigencies of the case, and, when nothing more is
required, may order a sum of money to be paid to
the plaintiff, or give him a personal judgment there-
for, to be enforced by execution." *Baily* v. *Horn-
thal,* 154 N. Y. 648, 660 (49 N. E. 56, 61 Am. St. Rep.
645).

The record discloses that Bert Hanna, as surviv-
ing partner of himself and W. Herbert Grigg, sought,
after the death of Grigg, to absorb all of the part-

nership assets, and to this end had the co-operation
of the Detroit Trust Company. He suppressed ma-
terial facts from the commissioners on claims which
it was his duty to disclose, and the Detroit Trust
Company, if it did not co-operate in the fraud in
this particular, was negligent in the discovery of the
facts which it ought to have discovered, in the pres-
entation of them to the commissioners on claims, and
in defending the estate against the Hanna claims.
It was a fraud upon the probate court and upon the
Grigg estate for the Detroit Trust Company, exec-
utor of the Grigg estate, not to disclose to the pro-
bate court, but to suppress from it, the appraisals
of the Michigan avenue property and the Tireman
avenue property of $150,000 and $125,000 respec-
tively, which it had in its possession, signed by Bert
Hanna, and to lead the probate court to act upon
appraisals of the same property of $50,000 and
$49,000 respectively. This $176,000 directly affected
the rights of the Grigg estate and the action of the
probate court. After Bert Hanna procured the al-
lowance of his claim of $200,000 by suppressing the
facts, and by the negligence of the Detroit Trust
Company in not defending against it, and the De-
troit Trust Company had obtained authority to sell
the Michigan avenue property and the Tireman ave-
nue property by the suppression from the probate
court of the appraisals signed by Bert Hanna, its
prospective purchaser, in its possession, it made a
deal with Bert Hanna by which it swapped the real
estate in question for his fictitious claim of $200,000,
and $15,000 additional which he paid. And it is
these transactions, and the confirmation thereof by
the probate court, that defendants now say may not
be called in question in this suit because *res judicata,*
and because the Detroit Trust Company's final ac-
count was allowed.

It is an old saying "fraud vitiates everything." And whether there was collusion between the Detroit Trust Company and Bert Hanna in relation to the administration of the Grigg estate or not, there was negligence and improper handling of the estate upon the part of the Detroit Trust Company. There was failure on its part to disclose the appraisals of the Michigan avenue and Tireman avenue property which it was its duty to disclose, and this amounted to a fraud upon the Grigg estate and upon the probate court. There was a negligent failure to oppose the claims of Hanna presented against the Grigg estate. And there was failure to give notice of the sale of the Michigan avenue and Tireman avenue real estate to anyone in interest; and failure to notify the plaintiff of the claims which Bert Hanna presented against the estate. The probate proceedings under such circumstances do not constitute a bar to proceedings in equity and cannot be made the basis of any claim of *res judicata*. Similar questions have been repeatedly before the court. *Heath* v. *Waters, supra; Perrin* v. *Lepper,* 72 Mich. 454; *In re Rahn's Estate, supra; Heap* v. *Heap, supra*. The probate proceedings in the matter of the estate of William Herbert Grigg do not prevent a suit in equity if it is otherwise proper. *Perrin* v. *Lepper,* 49 Mich. 347. It was the duty of the Detroit Trust Company to file a true and correct inventory of the property of the estate, whether such property was owned by the estate individually, or as a tenant in common, or as an interest in partnership property. *Perrin* v. *Lepper,* 72 Mich. 454. And it was likewise the duty of the defendant Detroit Trust Company to defend the estate against all unjust claims. *Perrin* v. *Lepper,* 72 Mich. 454. The Detroit Trust Company failed to perform this duty. The trial court found the Detroit Trust Com-

pany was guilty of negligence and improper handling of the affairs of the estate of William Herbert Grigg, and we agree with these findings. The losses resulting to the Grigg estate arose largely from the negligent failure of the Detroit Trust Company to perform its duty. The bill of complaint not only charged fraud upon the part of the Detroit Trust Company, but gross negligence on its part in dealing with the affairs of the estate and fraudulent accounting in the probate court. The trial court said of the Detroit Trust Company:

"Its administration of the estate was faulty almost in the extreme. It was its duty as special administrator to file its accounts as such with inventory of property coming to its hands in that capacity as soon as the circumstances permitted. It filed no inventory and made no accounting until October of 1933, at least two years after the time when it should have accounted. It was its duty to file a true and accurate inventory, as executor, promptly after its appointment, and secure an appraisal of the assets of the estate with an equal degree of promptness. The inventory which was filed was not accurate. The Michigan avenue property was treated upon the books of the Grigg-Hanna Company as a partnership asset, and had been continuously so treated. Mr. Hanna advised the trust company in writing of this fact. The inventory, however, listed the vendee's interest in the land contract upon the Michigan avenue property as though the land were the individual holding of Mr. Hanna. As a matter of fact, the transaction was such that Mr. Hanna was an equitable mortgagee of the interest of Mr. Grigg in the Grigg-Hanna Company, and the inventory as filed should have reflected this fact, which was easily ascertainable. The Tireman avenue property was subject to an outstanding mortgage, upon which there was due and unpaid the sum

of $39,000. This mortgage was executed by Mr. Hanna. The inventory should have so stated. So far as an appraisal is concerned, there was none filed until the middle of 1932, after the agreement of settlement with Mr. Hanna had been entered into. The testimony would warrant the conclusion that the appraisal was made up to fit the agreement, and not the agreement in the light of a fair appraisal. It was the duty of the trust company to notify the heirs of the Hanna claim and to consult with them regarding the proposed settlement with Mr. Hanna before it was made. Neither of these things were done. It was the duty of the executor to account. It did not do so until twice cited to show cause by the probate court. It was the duty of the trust company to treat the heirs of the Grigg estate as the beneficiaries of any trust ought to be treated by the trustee. There was a conspicuous lack of sympathetic and fair-minded dealing in this regard. All of these matters indicate a negligence and improper handling of the affairs of the estate. The evidence, however, *does not show any personal profit to the trust company,* and therefore falls short of that clear and convincing showing of fraud which is necessary as a basis of recovery against it."

"The obligation immediately attaching upon the neglect of duty is an obligation to make compensation for the consequences." *Dornford* v. *Dornford,* 12 Ves. Jr. 127 (33 Eng. Rep. 49).

"A question was raised on the part of Lord Cadogan's executors, whether, as this was a mere personal default, productive of no benefit to his estate, his assets are liable to make compensation: but in *Scurfield* v. *Howes* (3 Bro. Ch. 90 [29 Eng. Rep. 425]) the trustee's estate had derived no benefit from the breach of trust; and in *Adair* v. *Shaw* (1 Sch. & Lef. [Irish Ch.] 243), Lord Redesdale says, 'It has been the constant habit of courts of equity to charge persons in the characters of trustees with the consequence of a breach of trust: and to charge

their representatives also; whether they derive benefit from the breach of trust, or not.' " *Montford v. Lord Cadogan,* 17 Ves. Jr. 485 (34 Eng. Rep. 188).

"The court does not inquire into the particular benefit that has been made; but fastens upon the party an obligation to make good the situation of the *cestui que trust.*" *Moons* v. *De Bernales,* 1 Russ. 301 (38 Eng. Rep. 117).

"The failure of an executor to perform his duty, which results in loss to the beneficiaries of the will of the testator, amounts to a *devastavit,* whether from fraud, conversion, negligence, or maladministration." *MacKenzie* v. *Union Guardian Trust Co., supra,* 588.

What is a *devastavit?* Bouvier defines it as "the mismanagement and waste by an executor, administrator, or other trustee, of the estate and effects trusted to him as such, by which a loss occurs." 1 Bouvier's Law Dictionary (Rawle's 3d Rev.), p. 860. And Corpus Juris defines it as "a failure to apply the funds as the law directs; a wasting of assets; a wasting of the estate—a misapplication of the assets." 18 C. J. p. 1031.

"Negligence on the part of an executor, administrator or trustee, may equally tend to the waste of the estate as the direct destruction or maladministration of the assets and render him guilty of a *devastavit.*" 1 Bouvier's Law Dictionary (Rawle's 3d Rev.), p. 860.

"The law requires from trustees good faith and due diligence, the want of which is punished by making them responsible for the losses which may be sustained by the property intrusted to them: when, therefore, a party has been guilty of a *devastavit,* he is required to make up the loss out of his own estate." 1 Bouvier's Law Dictionary (Rawle's 3d Rev.), p. 860.

"An executor, or other trustee, who mismanages, or puts the assets in jeopardy, by his insolvency, either existing or impending, should be prevented from further interfering with the estate." *Elmendorf* v. *Lansing,* 4 Johns. Ch. (N. Y.) 562.

"A trustee is liable for misconduct or breach of trust or negligence, as well as for money actually received. *Clarke* v. *Ormonde,* Jac. 108, 120 (37 Eng. Rep. 791). And if in these ways he injures the *cestui que trust,* he is liable, whether he himself gains by his misbehaviour or not. Lewin Trusts, 634; *Ex parte Shakeshaft in the matter of Kempson,* 3 Bro. Ch. 197, 198 (29 Eng. Rep. 487)." *Taylor* v. *Benham,* 5 How. (46 U. S.) 233, 275.

"A *devastavit* is a mismanagement of the estate and effects of the deceased, in squandering and misapplying the assets contrary to the trust and confidence reposed in them, for which executors and administrators shall answer out of their own pockets, as far as they had, or might have had, assets of the deceased.

"Executors may be guilty of a *devastavit,* not only by a direct abuse by them, as by spending or consuming the effects of the deceased, but also by such acts of negligence and wrong administration as will disappoint creditors of their debts." 4 Bacon's Abridgment p. 100, title, "Executors and Administrators" (L).

Where an executor was negligent in his disregard of the duties imposed under the will, and he was negligent in his failure to take the usual and ordinary steps to protect the assets of the estate, the executor will be held liable. *Stong's Estate,* 160 Pa. 13 (28 Atl. 480).

The basis of liability of the Detroit Trust Company, as executor of the estate of W. Herbert Grigg, is not personal profit to it, but loss to the estate,—

not profit from fraud, but loss through negligence.
We are constrained to hold the plaintiff established
liability on the part of the Detroit Trust Company,
and that part of the decree of the trial court dis-
missing the bill of complaint as to it will be re-
versed, with costs to plaintiff; and the case will be
remanded for an accounting in accordance with the
decree of the trial court, except that the amount of
liability of the Detroit Trust Company will be de-
termined upon such accounting in accordance with
the opinion herein.

CHANDLER, J., concurred with POTTER, J.

NORTH, J. (*concurring in part*). Review of this
record brings the conclusion that it does not estab-
lish fraud nor gross neglect of duty on the part of
the Detroit Trust Company when acting as executor
of the Grigg's estate, as is charged by plaintiff.
This being true plaintiff cannot by her bill in equity
go back of the probate orders which have disposed
of the same issues that plaintiff now seeks to have
readjudicated as to the Detroit Trust Company.
Under such circumstances the orders of the probate
court, so far as the trust company is concerned, are
*res judicata* of the various controversies presented
by plaintiff's bill of complaint.

"The orders of probate courts disposing of
estates have the force and effect of judgments in
courts of record, are *res judicata* of the matters
therein disposed of, and therefore may not be col-
laterally attacked." *Chapin* v. *Chapin,* (syllabus)
229 Mich. 515.

In a comparatively recent case we had occasion
to pass upon the finality of an order of the probate
court approving the settlement of an infant's claim

against a tortfeasor. In that case, involving the rights of an infant, we held that since the probate court had jurisdiction of the matter its determination could not be challenged "except by appeal therefrom or by direct attack in equity for fraud, no other inquiry may be made into its sufficiency (citing cases)." *McMann* v. *General Accident Assurance Corp.*, 276 Mich. 108.

This record clearly discloses that the trial judge gave the controversy painstaking detailed consideration. His findings of fact and his interpretation of the law are in accord with the foregoing. I concur with Mr. Justice POTTER in so far as he writes for affirmance but not otherwise. On this record the decree entered in the circuit court should be affirmed.

WIEST, C. J., and BUTZEL, and BUSHNELL, JJ., concurred with NORTH, J.

BUSHNELL, J. (*concurring in part*). I concur in what Mr. Justice POTTER has said with respect to the liability of the defendants other than the Detroit Trust Company; but I cannot concur in his findings that plaintiff has established liability on the part of the trust company. He feels "constrained" to do so. I cannot reach the same conclusion without finding that the late Thomas T. Leete, former counsel for the executor of the estate of William H. Grigg, was guilty of "corrupt, fraudulent and criminal conduct." As stated in Mr. Justice POTTER's opinion in a quotation from *Egan* v. *Grece*, 79 Mich. 629, 639, when such charges—"are made against the dead, who have occupied positions of trust, and whose acts have been authorized and confirmed by a court of competent jurisdiction, the proof must be so clear

and convincing as to satisfy every reasonable mind."

We need not go outside the record for proof that Mr. Leete was a "very well known lawyer in the city of Detroit for a great many years and a member of one of the leading firms of the city, a lawyer of good repute, high standing and ability." The witness might have added that Mr. Leete's good reputation was also known to the bench and bar of the State, outside the community in which he lived.

The trust officer who testified stated that he had the advice of Mr. Leete; that the Hanna claim was discussed with him and that he acted upon Mr. Leete's advice in handling the affairs of the Grigg estate.

It is quite possible that, in 1932, during the darkest days of the depression, Mr. Leete realized that values had sunk to a very low depth and that the outlook was most discouraging; that what were formerly good assets had become serious liabilities; and that the release of the Grigg estate from its large obligations on the land contracts and the receipt of $15,000 in cash was most advantageous. We further note that the agreement with Hanna provided that the land contracts were to be returned to him. This may explain their disappearance.

Mr. Leete is not here to testify; he is dead and cannot defend his good name; but there is every reason for this court to be persuaded in its determination by the reputation that he built up over a lifetime. The trial judge might have been influenced in his findings by the justifiable presumption that Mr. Leete would not knowingly countenance a fraudulent act, and by the fact that he certainly was never known to have participated in one. Respect for the

administration of law demands that courts take notice of the good reputation of their officers, and justice cannot be had without insisting upon the preservation of the good name of our deceased attorneys and counselors unless proof to the contrary is "so clear and convincing as to satisfy every reasonable mind." *Egan* v. *Grece, supra.*

We said in *Baker* v. *Frischkorn,* 271 Mich. 485, 490:

"Fraud may not be lightly presumed. It must be clearly proved and established by satisfactory evidence and by facts which are inconsistent with an honest purpose. *Pierce* v. *Pierce,* 55 Mich. 629; *Graham* v. *Graham,* 184 Mich. 638; *Donnelly* v. *Lyons,* 173 Mich. 515."

I agree that the record "indicates a negligence and improper handling of the estate," and that the Detroit Trust Company's "administration of the estate was faulty almost in the extreme," but, as was said in *Sharrow* v. *McMichael,* 280 Mich. 114:

" 'Fraud cannot be lightly inferred and the burden of proof was upon plaintiffs. The circuit court was not convinced that plaintiffs established the fraud charged and our examination of the evidence leads us to the same conclusion. *Kirby* v. *Gibson Refrigerator Co.,* 274 Mich. 395, 401 (103 A. L. R. 1343).' "

I, therefore, concur in Mr. Justice POTTER's opinion, except in the finding of liability on the part of the Detroit Trust Company. The decree of the trial court should be affirmed, without modification.

BUTZEL, and SHARPE, JJ., concurred with BUSHNELL, J.

FEAD, J., took no part in this decision.