This is an appeal by plaintiff from an order of the circuit court which on appeal from probate court affirmed the order of the probate court allowing in full, as presented, the final account of the defendant, guardian of an incompetent person, Grace S. Cressor, now deceased. Surviving Mrs. Cressor are her two children and heirs-at-law, one of whom is the defendant, William J. Saunders, who was also her guardian. Mrs. Cressor's other child, Mary S. Stracke, plaintiff and appellant, is also an incompetent and is represented on this appeal by her guardian, Ann Arbor Trust Company.
Plaintiff complains of the allowance of four groups of items in the account:
First, purchase price of an automobile and interest thereon;
Second, various items of expense and moneys advanced by guardian;
Third, defendant guardian's charges for services and commissions;
Fourth, defendant's claim for exoneration from loss on sale of ward's interest as a partner in a beauty parlor.
The record does not show whether the disputed items of moneys advanced, expenses incurred or guardian's charges for services were set forth or included in the only "annual" accounts, four in number, filed in 1929, 1932, 1933 and 1934, or in orders allowing the same. Most of the disputed *Page 158 
items had accrued before the filing of the last annual account in 1934.
The final account was filed November 14, 1942, after the death of the ward, Mrs. Cressor.
In regard to the first disputed item, the automobile in question was purchased on the selection and approval of the ward, Mrs. Cressor, in October, 1928, for the net amount of $1,803, for which amount defendant, the accountant, claims credit. Mrs. Cressor lived at 934 South State street, near the stadium, in Ann Arbor, and her son Saunders lived at the foot of Longshore drive on the Huron river, about three miles from her residence. Saunders seems not to have had any other car to use during the period in which he claims the car in question was in practically daily use for his mother's benefit, and he used the car himself in driving from his residence into the city and on long drives and for pleasure drives. He claims his mother, Mrs. Cressor, paid for the gasoline and oil, except the amount estimated to be for his personal use. He testified to several items repaid him for insurance premiums and for gas and oil. He took the title in his own name, carried the insurance in his own name, and when the car was worn out and finally sold in 1939, he signed his own name to the transfer of title and the affidavit therefor. He testified his mother, "didn't want it to appear in any account because she was always afraid of her daughter who would create considerable rumpus if she discovered that her mother was spending any money on herself." Saunders testified that his purpose in buying the car was for his mother's personal convenience and to benefit her health, because she was then beginning to fail, and to keep her from being a prey to designing salesmen who would accommodate her with a ride and close a deal to her disadvantage while *Page 159 
on the ride. The price and cost of upkeep of the car were not mentioned in defendant's accounts to probate court filed in the period 1929-1934.
Several witnesses were sworn on behalf of defendant. Mrs. Hardy swore that Mrs. Cressor said that she "bought the car and left it in Billy's charge." Mrs. Blanche Seabolt testified Mrs. Cressor said that "Billy and her" bought the car, and "We got a new car." Neva Seybold testified Mrs. Cressor spoke of the car as "my car." Mrs. Emily Cornell testified Mrs. Cressor said, "It is my car. I paid for it." Miss Mildred Cornell testified Mrs. Cressor called it "my car." Severine C. Curtis testified that Mrs. Cressor "spoke about it as her car." Mrs. Gladys Ware Saunders, wife of defendant, testified, "We bought the Studebaker because it had a comfortable back seat. It was the one she preferred."
The testimony fails to convince us that the ward, Mrs. Cressor, was indebted to defendant for the purchase price of the car or interest thereon. From one witness's testimony we could conclude that Mrs. Cressor and defendant were owners of equal interests in the car; from the testimony of another witness that Mrs. Cressor had paid for the car, therefore she would not owe defendant for the purchase price nor for interest thereon. It could be possible to infer from a view of all of the testimony that defendant had given his mother either the ownership of the car or some right to partial use of it. No witness quoted Mrs. Cressor as saying she owed her son for the price or value of the car. According to his own testimony and the undisputed facts, defendant purchased the car in October, 1928, paid for it with his own money, never set forth in any account or other statement in probate court for 14 years thereafter anything to indicate *Page 160 
his mother's ownership of the car, the title and policies of insurance standing at all times in defendant's own name, though his mother possessed sufficient funds to pay for the car. The car was at all times in defendant's possession, kept at his residence and used for his own personal purposes as well as for his mother's benefit. If his mother in fact owned the car, defendant kept that fact a secret from his sister, plaintiff, until plaintiff became an incompetent. Defendant's claim that plaintiff would make a fuss if she knew about it seems to us insufficient to explain away the proper inference to be drawn from the facts proven and from defendant's actions above recited.
The conclusion of the trial court that the item of the price of the car and interest thereon was a proper credit was clearly contrary to the weight of evidence, and that part of the order appealed from is reversed.
As to the fourth item, loss on sale of partnership interest in the Blue Bird Hair Shop, the ward had established herself as a partner in this business prior to the guardianship. The guardian set forth the "book value" of the interest in his inventory. Mrs. Cressor during her competency conducted the business, and after his appointment, her guardian with the approval of her only other presumptive heir-at-law thereafter continued the business. The probate court was informed of the existence of this item in the assets of the estate. The business of the partnership became progressively less remunerative in the depression years, and by reason of greatly enhanced competition. Each partner withdrew $1,233.50. The ward and her family had services unpaid for of $900. We do not feel justified in overturning the decision of the trial judge which exonerated the guardian for the loss on the sale *Page 161 
on October 25, 1937, as compared with the inventory value of this item, the inventory having been filed July 23, 1928.
The guardian cannot now be allowed credit for any claims for expenses, disbursements or compensation which were disposed of in the orders allowing his annual accounts. As to such, the orders allowing accounts are res judicata. Such is the plain import of the prevailing opinion written by Mr. Justice NORTH in Grigg v.Hanna, 283 Mich. 443, at pp. 467, 468. See, also, Nowland v.Rice's Estate, 138 Mich. 146. However, an order allowing account does not adjudicate what is not before the court. Creek
v. Laski, 248 Mich. 425 (65 A.L.R. 1113); MacKenzie v. UnionGuardian Trust Co., 262 Mich. 563. The record before us does not indicate what items, if any, now claimed by the guardian, were disposed of in the allowance of his annual accounts. Neither the annual accounts nor the orders allowing them are shown in the record. However, in the event that the guardian has rendered certain annual accounts without including therein any claim for his fees or compensation, or current expenses, and in the absence of any order of the probate court regarding the same, the guardian is not precluded from including the same in his final account. Nor is the court precluded from passing thereon and allowing or disallowing the same.
The case should be remanded to the circuit court for entry of judgment disallowing appellee's claim of disbursement for the automobile and interest thereon, with exoneration from loss on sale of beauty parlor, also for disallowance of any claims by appellee as guardian for expenses, compensation or disbursements which were passed upon by the probate court in the allowance of annual accounts. Judgment should be entered accordingly. Thereafter *Page 162 
the case should be remanded to the probate court for further proceedings in accordance with such judgment. Costs to appellant.
BUTZEL, C.J., and CARR, SHARPE, BOYLES, NORTH, and STARR, JJ., concurred. BUSHNELL, J., took no part in the decision of this case.